**In the Matter of Charles M. KOVACS, Bankrupt.**

**Karin HUFFER, a/k/a Karin Kovacs, Plaintiff,**

v.

**Charles M. KOVACS, Defendant.**

**Bankruptcy Nos. BK–LV 78–445, BK–LV 78–446.**

United States Bankruptcy Court, D. Nevada.

Oct. 12, 1979.

Darrell L. Clark, of Clark & Zubel, Las Vegas, Nev., for plaintiff.

Leonard A. Wilson, Las Vegas, Nev., for defendant.

## MEMORANDUM OPINION

LLOYD D. GEORGE, Chief Judge, Bankruptcy.

Without a question, one of the most rancorous and distasteful of human interactions is that which frequently occurs when a marital union is dissolved and the parties' spiritual and legal divisions must also come to manifest themselves in the former couple's material community. Suddenly, those worldly possessions which would have once been freely shared, without question of relative property rights or ownership, must now be clutched fervently to the bosom in hope of preserving them from the predatory grasp of this newly-created stranger. Compounding the discord already existing in this situation are the numerous difficulties which arise when the divorced spouses have been partners not only in the traditional sense, but also within the commercial meaning as well. And, even more unsettling are the inherent conflicts engendered by the parties when they assume additional fiduciary responsibilities toward each other by the adoption of a corporate form for their family business.

As might be suspected, the case at bar involves certain property of a closely-held corporation, the entire shareholder interest of which was owned by the parties herein, who were, until recently, husband and wife. This corporation, Kovacs Enterprises, Inc., in turn owned and operated a business known as Kovacs Music Company, in the Las Vegas, Nevada area. One portion of this business dealt with the rental of musical instruments, at relatively low rates, to public school students and another part of the operation involved the actual sale of such instruments to general purchasers. The evidence adduced at trial also shows that Mr. Kovacs, a music teacher by profession, gave lessons on behalf of the business' in his after-school hours to members of the public.

Early in 1976, personal and business differences between the Kovacs' began to reach serious proportions. Apparently, in mid-1976, Mr. Kovacs entered into an ar-

rangement with one Mr. Kaywood, whereby the latter was to take guitars from the business premises and sell these, along with lesson contracts, as a package deal, to the general public. Mr. Kaywood seems to have succeeded quite well in this enterprise, with but one notable difficulty. None of the gross revenues generated by this venture, some $5,200.00, ever found their way back to the Kovacs business. After listening to the testimony given by both Mr. and Mrs. Kovacs, however, the Court is thoroughly convinced that Mr. Kaywood and Mr. Kovacs in no way conspired to keep these funds from the business supervision of Mrs. Kovacs. That Mrs. Kovacs was never overly pleased with this arrangement, and that it was an exercise in poor business judgment on Mr. Kovacs' part, is quite obvious from the statements given in court by the Kovacs. Nevertheless, the evidence presented does not show that Mr. Kovacs was ever a recipient of the funds derived from the sale of the guitar packages or that he ever intended that these funds not be returned to the business.

In November 1976, after the working relationship of the Kovacs' had deteriorated beyond salvation, Mrs. Kovacs began to believe that other musical instruments were also disappearing from the business premises. Prior to this time, the Kovacs had ceased cohabitation and Mr. Kovacs had gone to live with a Fisher family. Suspecting that Mr. Kovacs had transferred these instruments to the Fisher residence, Mrs. Kovacs and her friends, a Mr. and Mrs. Leggett, went to the Fisher home at a time in which Mrs. Kovacs hoped that her husband would not be present and asked if she could retrieve the instruments. Although denied access to the instruments, Mrs. Kovacs and her friends did see several such devices, which were later estimated by Mrs. Kovacs to be worth $1,475.00. The value of these instruments is greatly disputed by Mr. Kovacs, however, who claims that only two of them were property of the community music business, the others being his own personal property. In any case, Mr. Kovacs further asserts that these instruments were later recovered by Mrs. Kovacs with the aid of the Clark County Sheriff's Office.

At a property division hearing held pursuant to the Kovacs divorce proceedings, Mrs. Kovacs took the stand and rendered roughly the same testimony given before this Court. Thereafter, Judge Thomas J. O'Donnell of the Eighth Judicial District Court of the State of Nevada, in and for the County of Clark, ordered, adjudged and decreed that "the Defendant [Mrs. Kovacs] have judgment against the Plaintiff in the sum of $6,675.00 for the inventory removed from the premises of the business." This was based upon a written finding of fact that "the Plaintiff took from the business assets a value of $6,675.00."

With this judgment in hand, Mrs. Kovacs now comes before this Court to request that the discharge of Mr. Kovacs not deter her from collecting the sum due her because of Mr. Kovacs' and Mr. Kaywood's actions. Moreover, inasmuch as she grounds her request in the provisions of Section 17a(4) of the Bankruptcy Act, 11 U.S.C. § 35a(4) (1976), rather than in Sections 17a(2) or (7) of the Act, 11 U.S.C. §§ 35a(2) or (7) (1976), Mrs. Kovacs, now Ms. Huffer, claims to have avoided the proof of intent complications of the first citation, *see* 1 D. Cowans, Bankruptcy Law and Practice § 271, at 343–45 (2d ed. 1978), and the constitutional, *compare In re Stimson*, 4 Bankr.Ct.Dec. 441 (D.Colo.1978); *In re Baird*, 4 Bankr.Ct.Dec. 926 (S.D.Fla. 1978); *In re Pinkerton*, 4 Bankr.Ct.Dec. 182 (N.D.Ga.1978); *In re Kelley*, 4 Bankr.Ct. Dec. 648 (M.D.Tenn.1978), *with In re Wasserman*, 3 Bankr.Ct.Dec. 467 (D.R.I.1977), and "property settlement versus alimony" disputes, *see In re Woods*, 561 F.2d 27 (7th Cir. 1977); *Nitz v. Nitz*, 3 Bankr.Ct.Dec. 1198 (10th Cir. 1977), of the latter provision. Indeed, her counsel has ably demonstrated that in order to establish a misappropriation by an officer or fiduciary under Section 17a(4), one need not show any intent on the part of that Bankrupt to defraud or deprive, in any way, his cestuis of the benefit of the property taken. *In re Hammond*, 98 F.2d 703 (2d Cir.), *cert. denied sub nom. Hammond v. Irving Trust Co.*, 305 U.S. 646,

59 S.Ct. 149, 83 L.Ed. 418 (1938). Proof must only be given as to a) the Bankrupt's fiduciary relationship with the Claimant or his position as a corporate officer, from which role the contested obligation arose, b) the actual taking of the property by or through the Bankrupt, c) the unlawful or unauthorized character of the taking, and d) the intentional nature of the physical act involved, that is to say, the fact that the taking was not accidental or involuntary. *See id.* at 705; *In re Bernard,* 87 F.2d 705 (2d Cir. 1937); *Kadish v. Phx.-Scotts. Sports Co.,* 11 Ariz.App. 575, 466 P.2d 794 (1970). The amount of proof necessary to establish each of these elements may be the subject of considerable debate. *See generally* 1 D. Cowans, Bankruptcy Law and Practice § 268, at 340 (2d ed. 1978) (referring to burden of proof problems with respect to objections to discharge under Section 17a(2) of the Bankruptcy Act). Nevertheless, this Court sees no purpose in interjecting itself into such a murky area of the law at this time. Quite clearly, the burden of establishing some sort of a prima facie case on each of these elements is upon the party seeking a denial of discharge on an obligation. *See In re Newman,* 2 Bankr.Ct.Dec. 894 (S.D.N.Y.1976). *See also In re Taylor,* 514 F.2d 1370 (9th Cir. 1975) (involving an objection to discharge under Section 17a(2)). With this in mind, the Court finds no evidence, other than the intuitive hunches of Ms. Huffer, to show that the acts of the Bankrupt were not committed pursuant to the authority given him by the Articles and Bylaws of Kovacs Enterprises, Inc. and the laws of the state of Nevada.

In each of the cases cited by Counsel for the Plaintiff on the issue of proof of misappropriation by a corporate officer, and in each pertinent case found by the Court, the Bankrupt was shown to have either abused his corporate position for personal gain, in violation of his duty of loyalty, or to have clearly broken the law by his transfer of corporate assets. *See, e. g., In re Hammond, supra* (personal use of a corporate opportunity was an illegal constructive "taking" even though the corporation was not in a position to take advantage of that opportunity); *In re Bernard, supra* (unlawful taking from corporate funds of a preferential repayment of a debt owed to the bankrupt officer); *Bloemecke v. Applegate,* 271 F. 595 (3d Cir. 1921) (intent to defraud found); *Kadish v. Phx.-Scotts. Sports Co., supra* (unauthorized use of corporate funds for no valid corporate purpose). The Plaintiff, in the case at bar, has not even laid out for the Court the extent of Mr. Kovacs' authority to act on behalf of the family corporation. Rather, in each of the instances of property removal cited by Ms. Huffer, the Bankrupt has provided more than adequate explanations as to how his actions were aimed solely at furthering the lawful interests of the family business and not at advancing his own personal concerns.

In the case of the instruments taken by Mr. Kaywood, for example, the Court is convinced that Mr. Kovacs' only motivation in trusting the above person was to bring added revenues to the Kovacs Music Company business. That the final outcome of this operation was unsuccessful; indeed, that Mr. Kaywood may have in fact personally absconded with the funds produced by the venture, is irrelevant to a determination of whether Mr. Kovacs acted so improperly that the removal of the instruments should be considered a misappropriation under Section 17a(4) of the Bankruptcy Act.

Similarly, the unrebutted testimony of Mr. Kovacs with respect to the instruments found at the Fisher residence shows the latter to have been either his own personal property or "demonstrators" used by him in giving lessons on behalf of the Kovacs Music Company. Again, no corporate wrongdoing can be found by the Court.

In this regard, the finding and judgment of Judge O'Donnell are not determinative of the legal and factual questions now before this Court. In making his decision in the Kovacs property division case, Judge O'Donnell was statutorily guided by the principle applied in all community property divisions upon divorce that "(i)n granting a divorce, the court . . . shall make such disposition of the community

property of the parties, as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce, and to the burdens, if any, imposed upon it, for the benefit of the children." Nev.Rev.Stat. 125.150(1) (1975). On its face, the finding of Judge O'Donnell concerning Mr. Kovacs' removal of property from the family business, therefore, does not appear to have made any value interpretation as to the corporate or legal propriety of the Bankrupt's actions, but only an objective determination of fact, undoubtedly made in relation to the same sort of "just and equitable" allotment of community property as is mentioned in the Nevada Revised Statutes.

As previously stated, Ms. Huffer admits that the testimony she gave in the present proceeding was substantially the same as that which was rendered by her in Judge O'Donnell's court. This Court can find nothing in this statement which would warrant Judge O'Donnell making a determination of misappropriation by a corporate officer. It must be assumed, therefore, that the finding of Judge O'Donnell was only aimed at placing a financial burden upon the Bankrupt to balance a loss ostensibly sustained against the overall community assets to be divided because of Mr. Kovacs' poor business sense. Hence, this finding should not be relied upon by this Court in deciding whether a misappropriation of corporate assets was involved or only their mismanagement and loss.

Additionally, Counsel for the Bankrupt has capably demonstrated that neither of the claimed property removals can be definitely proven to have taken place after the management of Kovacs Enterprises, Inc. had been placed solely in the hands of Ms. Huffer by judicial order. Therefore, it cannot be shown that Mr. Kovacs was not in a proper position to authorize Mr. Kaywood to attempt an outside sale of instruments because of the above order, so long as the acts committed and Mr. Kovacs' purpose in doing them was not in contravention of Nevada law or the corporate charter of Kovacs Enterprises, Inc. And, as has already been noted, the Plaintiff has present-

ed no evidence to support a finding of the latter sort of misconduct.

With no guidance as to Mr. Kovacs' role in the above corporate organization, the Court is naturally hesitant to nullify the effect of Mr. Kovacs' discharge with respect to this debt. The Court's decision will be in favor of the Defendant, whose Counsel will prepare an appropriate written judgment.