CORNELIA G. KENNEDY, Circuit Judge.
Carlisle Cashway, Inc. (Cashway) appeals from a decision of the District Court, 10 B.R. 322, affirming a decision of the Bankruptcy Court denying Cashway’s application to declare debts of Johnson to Cash way nondischargeable in bankruptcy. For the reasons stated below, the decision of the District Court is reversed.
Since 1974 Johnson has been engaged in the business of constructing pole barns and other structures. His business, which grossed $143,081.12 in 1976 and $161,227.20 in 1977, fell off sharply which led to his filing a petition for bankruptcy in October 1978. In the spring of 1978, Johnson agreed to build pole barns for three individuals, Pierce, Elderkin and Noor. Pierce advanced $6,400 on March 29, 1978 and paid the balance, $1,640, in May 1978. Elderkin advanced $3,112 on April 4, and paid the $778 balance April 21. Noor advanced $2,877 in June and paid the remainder, $1,233, in July. Johnson’s total payments from the three owners was $16,040. Cash-way was the major supplier of materials for the three pole barns and furnished goods for the three jobs totalling $11,579.75; Pierce, $6,249.30; Elderkin, $2,503.17 and Noor, $2,827.28. No materialmen’s lien was perfected. Subsequently, Johnson used the $16,040 he received from the owners to pay laborers, other materialmen and other business and personal expenses. He paid Cash-way only $2,000, however, leaving a balance due of $9,579.75.
Cashway filed a complaint in the Bankruptcy Court to have the $9,579.95 owed to *251 it declared nondischargeable under the Bankruptcy Act, section 17(a)(4), former 11 U.S.C. § 35(a)(4) (1976) (current version at 11 U.S.C. § 523(a)(4) (Supp. Ill 1982)). Cashway asserted that the Michigan Building Contract Fund Act, Mich.Comp. Laws Ann. §§ 570.151-153 made Johnson a fiduciary with respect to the $16,040, and that his failure to pay Cashway and use of the money for personal and non-project related business expenses breached his fiduciary duties. Cashway asserted that the breach constituted a defalcation or misappropriation within the meaning of section 17(a)(4) which prevented the debt from being dis-chargeable.
The Bankruptcy Court found that the Building Contract Fund Act did not satisfy the “fiduciary capacity” requirement of section 17(a)(4) as a matter of law and that there had been no intentional or bad faith misappropriation or defalcation as a matter of fact. The District Court did not address the legal issue but instead affirmed on the ground that Cashway’s failure of proof on the issue of bad faith or intent to defraud was dispositive of its argument that a defalcation or misappropriation had occurred. In reaching this conclusion, the District Court adopted the Bankruptcy Court’s determination that Cashway conceded that Johnson was not guilty of any intentional fraud.
The record is clear in this case that Johnson breached his duties under the Building Contract Fund Act by using the greater portion of the $16,040 received from the three owners for purposes other than first paying laborers, subcontractors and materi-almen on those three pole barns. At issue on appeal is, first, whether the statutory trust imposed by the Building Contract Fund Act creates such a fiduciary relationship that Johnson was acting in a fiduciary capacity under section 17(a)(4) of the Bankruptcy Act and, assuming the first issue is affirmatively resolved, second, whether some element of specific intent or bad faith is necessary before a breach of one acting in such a fiduciary capacity will constitute a defalcation or misappropriation within the meaning of section 17(a)(4).
Section 17(a)(4) of the Bankruptcy Act provides that debts created by[1] the bankrupt’s “fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary capacity,” are not dischargeable in bankruptcy proceedings. A debt created while acting in a fiduciary capacity is a special debt, created by a breach of trust obligations defined by law, and is separate and distinct from any underlying contractual debt which arises from a bankrupt’s agreement with respect to goods or services. 11 U.S.C. § 35(a)(4) (1976); Carey Lumber Co. v. Bell, 615 F.2d 370 (5th Cir. 1980); Clarke & Rapuano, Inc. v. Morris Ketchum, Jr. and Associates (In re Morris Ketchum, Jr.), 409 F.Supp. 743, 745 (S.D.N.Y.1975). The question of who is a fiduciary for purposes of section 17(a)(4) is one of federal law, although state law is important in determining when a trust relationship exists.[2] Pedrazzini v. Runnion, (In re Pedrazzini), 644 F.2d 756, 758 (9th Cir. 1981); Angelle v. Reed (Matter of Angelle), 610 F.2d 1335, 1341 (5th Cir. 1980). The term “fiduciary” applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity. Davis v. Aetna Acceptance Co., 293 *252 U.S. 328, 333, 55 S.Ct. 151,153, 79 L.Ed. 393 (1934); Chapman v. Forsyth, 43 U.S. (2 How. 202, 207, 11 L.Ed. 236 (1884)). Moreover, the requisite trust relationship must exist prior to the act creating the debt and without reference to it Davis, supra, at 333-34, 55 S.Ct., at 153-54. State statutes which impose a trust ex-maleficio are not within the scope of section 17(a)(4) since such trusts only arise upon an act of misappropriation. Id.; Pedrazzini, supra, at 759. Angelle, supra, at 1340; Schleeht v. Thornton (In re Thornton), 544 F.2d 1005, 1007 (9th Cir. 1976). See also Devaney v. Dloogoff (In re Dloogoff), 600 F.2d 166 (8th Cir. 1979). Contra, Allen v. Romero (In re Romero), 535 F.2d 618 (10th Cir. 1976).
The Michigan Building Contract Fund Act imposes a “trust” upon the building contract fund paid by any person to a contractor or subcontractor for the benefit of the person making the payment, contractors, laborers, subcontractors and material-men. Mich.Comp. Laws Ann. § 570.151.[3] The contractor or subcontractor receiving the payments is the “trustee”. Id. The statute imposes a duty upon the trustee to use the money in the building contract fund to first pay laborers, subcontractors and materialmen on the particular project for which the funds were deposited before he uses the fund for any other purpose. Id., § 570.152.[4] People v. Miller, 78 Mich.App. 336, 345, 259 N.W.2d 877 (1977). Any contractor or subcontractor, who, with intent to defraud, retains or uses any portion of the building contract fund for any purpose other than to first pay the trust beneficiaries, is guilty of a felony in appropriating trust funds to his own use. Id. The appropriation by a contractor or subcontractor of any monies in the building contract fund before the payment of monies due or to become due trust beneficiaries, is evidence of intent to defraud. Id., § 570.153.[5] That the statute does not mandate any particular form or procedures in handling trust funds neither undercuts the validity of the trust nor renders the statute unconstitutionally vague. Miller, supra. The Building Contract Fund Act may give rise to a civil cause of action as well as criminal penalties. National Bank of Detroit v. Eames & Brown, Inc., 396 Mich. 611, 242 N.W.2d 412 (1976); B. F. Farnell Company v. Monahan, 377 Mich. 552, 141 N.W.2d 58 (1966).
The Building Contract Fund Act satisfies the express or technical trust requirements of section 17(a)(4). The trust relationship is unambiguously imposed on a contractor or subcontractor by the language of the statute. The trust res is clearly defined as the monies paid by any person into the building contract fund. The trustee is charged with specific affirmative duties, including paying out trust funds in accordance with the statutorily imposed pri *253 ority scheme, not using funds for its own purposes so long as trust beneficiaries, laborers, subcontractors and materialmen remain unpaid and using funds obtained for a specific project to first pay for labor and materials furnished for that specific project. The fact that the trustee is afforded some measure of discretion in handling trust funds does not defeat the trust under section 17(a)(4).
The Michigan statute satisfies the requirement that the trust exist separate from the act of wrongdoing and not arise ex-maleficio. The fiduciary relationship established by the Building Contract Fund Act arises at the time any monies are paid to the contractor or subcontractor whether or not there are any beneficiaries of the trust at that time and continues until all of the trust beneficiaries have been paid. Mich.Comp. Laws Ann. § 570.152; Miller, supra.
In this case a requisite trust was created when Pierce, Elderkin and Noor each paid Johnson for the pole barns. The fact that less than all of the total building contract fund had been advanced for each project prior to Johnson’s purchase of lumber and other materials from Cashway does not contravene the requirement that the trust be created prior to the act of wrongdoing out of which the contested debt arose. The relevant relationship within the meaning of section 17(a)(4) is the fiduciary relationship imposed by statute, not the debtor/creditor relationship created by Johnson’s purchase of the materials from Cashway. The relevant “debt” is the obligation caused by the breach of Johnson’s fiduciary duties to Cashway, not that unpaid balance on the contract. The relevant “act creating the debt” or “act of wrongdoing out of which the contested debt arose” is that created by Johnson’s appropriating the monies to his own use in derogation of the Building Contract Fund Act and failing to make payments to Cashway, not his failure to pay the balance outstanding.
Finally, the fiduciary duties imposed by statute are independent of and in addition to those obligations which spring from contract. Until some person makes a payment into the building contract fund, the contractor or subcontractor is liable to suppliers and laborers solely based on contract. Once a statutory trust is activated by payment into a building contract fund, the statute prohibits the contractor or subcontractor’s use of monies received for a particular project for anything other that first paying laborers and suppliers on that project.
Our conclusion that the Michigan Building Contract Fund Act satisfies the requirements of section 17(a)(4) of the Bankruptcy Act and is applicable in this case is consistent with case law from other circuits. Several recent cases have discussed whether section 17(a)(4) prevents the discharge of a general contractor’s debts when the general contractor has diverted payments intended to go to subcontractors and materialmen. State statutes that define the res, spell out fiduciary duties and impose a trust on the funds prior to the act creating the debt have been held to create section 17(a)(4) fiduciary relationships. Carey, supra; Besroi Construction Co. v. Kawczynski, (In re Kawczynski), 442 F.Supp. 413 (W.D.N.Y.1977); Truax & Hovey, Ltd. v. Grosso (In re Grosso), 9 B.R. 815 (N.D.N.Y.1981); Neely v. Edmond (In re Edmond) 5 B.R. 172 (W.D.Okl.1980). Those circuits that have dealt with statutes which impose only criminal or other penalties on a general contractor have refused to find a fiduciary relationship within the scope of section 17(a)(4). There the statutory trust arises only upon the act of misappropriation and cannot be said to exist prior to the wrong and without reference to it even though a technical or express trust may exist at that time. Pedraz-zini, supra; Angelle, supra; Thornton, supra. See also Dloogoff, supra. Contra, Romero, supra.
Our finding that a debt created by a breach of duties imposed by the statute is nondischargeable under section 17(a)(4) is consistent with this Court’s decision in Selby v. Ford Motor Co., 590 F.2d 642 (6th Cir. 1979). In Selby a contractor caused monies in a building contract fund to be disbursed to subcontractors on that project. When *254 the contractor filed in bankruptcy, the trustee sought to set aside these payments as preferential transfers under section 60a of the Bankruptcy Act. This Court agreed with the subcontractors that the payments could not be set aside because the subcontractors held title to the monies in the building contract fund as trust beneficiaries under the Michigan Building Contract Fund Act and, conversely, that the bankrupt contractor did not have a sufficient beneficial interest in monies in the building contract fund to render such funds its “property.” Id. at 644, 647. The Michigan Supreme Court has expressly held that monies paid by an owner to a contractor, and held by him as trustee of the building contract fund, are not the “property” of the contractor under the Bankruptcy Act. B. F. Far-nell, supra, at 557, 141 N.W.2d 58. To conclude that Johnson did not hold the building contract fund for the benefit of beneficiaries in a section 17(a)(4) trust would produce incongruous results in light of Shelby and B. F. Farnell. This is because a disbursement of building fund monies cannot be set aside as a section 60a preferential transfer under Shelby and such monies do not constitute section 70 property of the contractor under B. F. Farnell.
Since three building contract funds were created by Pierce, Elderkin and Noor’s payments to Johnson, we conclude that trusts that satisfy the requirements of section 17(a)(4) were created by operation of the Michigan Building Contract Fund Act.
We turn now to the issue of whether, under federal common law, some element of intent or bad faith is necessary before a breach of such fiduciary duties will constitute a misappropriation or defalcation within the meaning of section 17(a)(4). The Bankruptcy Court and District Court held that some bad faith or intent must accompany Johnson’s misappropriation or defalcation; that Johnson was a small contractor who simply could not pay his bills and had no intention of despoiling any trust estate for which he might have been responsible under Michigan law. It is impossible to discern from the lower courts’ statements whether they found that Johnson lacked the subjective intent to breach known legal duties or whether they assumed that Johnson did not actually know, and is not constructively charged with knowing that the law of Michigan forbade his use of funds deposited in the building contract fund for his own purposes without first discharging his indebtedness, actual and anticipated, to laborers, subcontractors and materialmen on the particular project for which funds were received.
Federal, not state, law controls our determination because it is the intent of Congress in using the word “defalcation” that we seek to discover. Neither the statute nor the legislative history reveal congressional intent as to the interpretation to be given the term “defalcation.” There is no restriction upon the word “defalcation” or any other term in section 17(a)(4). No particular mental state is required on the part of the person creating the debt in contrast to those designated in sections 17(a)(2) and (8), where a special mental element, intent, willfulness or maliciousness, is required above and beyond other elements prerequisite to the nondischargeability of a debt. See Turner v. Ward, 154 U.S. 618, 14 S.Ct. 1179, 23 L.Ed. 391 (1876). Had Congress intended to reach only intentional or bad faith defalcations, it could have easily narrowed the sweep of the definition by requiring a special mental element. See United States v. Turkette, 452 U.S. 576, 581, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981).
In Central Hanover Bank & Trust Co. v. Herbst, 93 F.2d 510 (2d Cir. 1937), the Second Circuit analyzed the term “defalcation” against the backdrop of the Bankruptcy Act of 1800, the Act of 1841 in which the term first appeared, subsequent versions of the bankruptcy laws and case law in concluding that defalcations under the Act of 1898 were not limited to deliberate malver-sions. Id. at 511-12. Defalcation was found to be a more encompassing term than embezzlement or misappropriation. In an earlier Second Circuit case, In re Bernard, *255 87 F.2d 705 (2d Cir. 1937),[6] misappropriation had been defined as being due to an actually or constructively known breach of duty, and not due to mere negligence or mistake of fact so that not every possible deficiency in a fiduciary’s accounts renders a debt nondischargeable. Id. See In re Hammond, 98 F.2d 703, 705 (2d Cir.), cert. denied, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938). The Central Hanover court stated that misappropriation, as construed in Bernard, probably carried a larger implication of misconduct than defalcation. Central Hanover assumed arguendo that some measure of misconduct was required to constitute a defalcation and did not decide the issue of whether innocent defaults were also included within its scope. In finding a defalcation, however, the Central Hanover court concluded that the mere taking of money entrusted to a fiduciary constituted a defalcation. In Central Hanover, Herbst, a dentist by profession, was appointed the receiver of a parcel of real estate in a foreclosure suit. Herbst was awarded an added amount in the order passing his intermediate account which he spent without waiting for the time to appeal to expire and without consulting the plaintiff in foreclosure regarding whether or not it intended to appeal. When the added amount was overturned on appeal, the surety, Central Hanover, was ordered to make payment. When Central Hanover sought recompense from Herbst, he filed and was adjudicated a voluntary bankrupt. Central Hanover alleged his debt was nondischargeable, having been created by his fraud, embezzlement, misappropriation or defalcation while acting in a fiduciary capacity. The Second Circuit agreed. It found “some measure of misconduct” by charging the bankrupt with knowledge of the legal principle that an order awarding him a fee would not protect him if reversed on appeal. The bankrupt’s actual knowledge of his fiduciary duties was not probative.
That knowledge of the facts underlying a breach of fiduciary duties will alone lead to nondischargeability of the debt and that the provisions of section 17(a)(4) apply regardless of the trustee’s knowledge of his legal duties was clarified in Hammond, supra, at 705. See also Bernard, supra, at 707.
This objective standard of determining whether a defalcation exists has been adopted by other courts. Carey, supra, at 376; Kawczynski, supra, at 418; Jasel Building Products Corp. v. Polidoro, (Matter of Polidoro), 12 B.R. 867, 870 (E.D.N.Y.1981); Alco Communications, Inc. v. Brown (In re Brown), 4 B.R. 539, 544 (N.D.Ill.1980); Huffer v. Kovacs (Matter of Kovacs), 1 B.R. 103, 105-06 (D.Nev.1979). The Fifth Circuit has adopted the position of the Second and extended defalcation to cover innocent defaults. Carey, supra, at 376. Michigan is among the states that have determined that defalcation, as the word is used in the federal bankruptcy laws, was intended to cover defaults other than deliberate malversions and includes a mere deficit resulting from a fiduciary’s duty to make the proper payment of money coming into his possession. Citizens Mutual Automobile Insurance Co. v. Gardner, 315 Mich. 689, 696-99, 24 N.W.2d 410 (1946). Further, this position is consistent with the standard for liability imposed by Mich.Comp. Laws Ann. § 570.-153, although not controlled by it.
An objective standard for finding a defalcation, that does charge a bankrupt with knowledge of the law and that does not weigh intent or motive, is consistent with the policy behind the bankruptcy laws of giving an honest debtor the opportunity for *256 economic rehabilitation. See Local Loan Co. v. Hunt, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Exceptions to the general rule of discharge exist for certain types of “bad acts.” See 11 U.S.C. §§ 35(a)(2), (4), (8). Although the “badness” of fraud, embezzlement or misappropriation is readily apparent, creating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke the section 17(a)(4) exception even without a subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so. This- is because the requisite “badness,” ■ to conform with the spirit of the bankruptcy laws, is supplied by an individual’s special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching these duties.
Neither is the case of Neal v. Clark, 95 U.S. 704, 24 L.Ed. 586 (1878), a bar. In Neal the Supreme Court stated that “the ‘fraud’ referred to in that section [the former equivalent of section 17(a)(4)] means positive fraud, or fraud in fact, involving moral turpitude or intentional wrong, as does embezzlement; and not implied fraud, or fraud in law, which may exist without the imputation of bad faith or immorality.” Id. 95 U.S. at 709. This language cannot be said to qualify “defalcation” to require intentional or bad faith breaches of known fiduciary duties for several reasons. First, the only issue before the Supreme Court was the scope of the term “fraud.” Second, the above-quoted language must be read in the context of the facts of that case. In Neal the bankrupt was not charged with actual fraud. The courts found that he had committed constructive fraud when he participated in the devastavit, or wasting, of a testator’s estate by purchasing bonds at a discount from the executor of that estate without inquiring whether the condition of the testator’s estate required the sale of that property. The Supreme Court went on to add that the evidence did not show that Neal entertained any purpose himself to commit a fraud, or aid the executor in committing one. Id. 95 U.S. at 709, 24 L.Ed. at 587. Whether Neal was guilty of constructive fraud under the law of Virginia was not before the Court. The lower federal court, however, had determined that both constructive fraud and actual fraud were within the scope of the term “fraud” under the bankruptcy laws. The Supreme Court disagreed. In its use of the language “moral turpitude” and “intentional wrong,” the Court was indicating that all of the underlying elements necessary for the non-dischargeability of a debt created by fraud must be effected by the personal action of the bankrupt and may not be imputed to him by the acts of another. The Supreme Court did not address the issue of whether the debtor had to have the intent to do an act which he knew would create liability, only that he had to intend to do the underlying acts. Finally, while intent is a necessary element of actual fraud, a defalcation may exist when there is a diminution, abatement or deficit in an account as a result of a mistake or negligence in addition to misconduct. See generally, 3 Collier on Bankruptcy, § 523.14[b], n. 3-4 (15th ed. 1981).
Although not controlling on this issue, the Sixth Circuit case of Selby reflects a concern that there be some symmetry between the bankruptcy laws and state laws governing the definition of “property.” See Selby, supra, at 644-45, 647. If subjective intent to breach a known fiduciary duty or bad faith was required before a defalcation could exist under section 17(a)(4), a debtor could obtain a discharge under the bankruptcy laws yet be sued under Michigan law for conversion. While an intent to convert property to one’s own use is necessary under Michigan law, it is not essential that the motive or intent with which the act is committed be wrongful. It is the effect of the act which constitutes conversion and generally the question of good faith, motive, knowledge or ignorance is not involved. Moore v. Andrews, 203 Mich. 219, 233, 168 N.W. 1037 (1918); Warren Tool Co. v. Stephenson, 11 Mich.App. 274, 299, 161 N.W.2d 133 (1968). Since subjective intent and bad faith are not required under Michigan law, in logic, if not in law, it appears reasonable that “defalca *257 tion” be evaluated using an objective standard.
Finally, measuring “defalcation” against an objective standard prevents ignorance of the law from becoming a defense to nondis-chargeability and provides an incentive for individuals, such as Johnson, who are engaged in occupations subject to special statutes to apprise themselves of their obligations under the law.
For the above-mentioned reasons, we conclude that a bankrupt is chargeable with knowledge of the law. The character of the liability imposed upon a fiduciary for appropriating property held by him in trust is the same whether he has actual knowledge that the law imposes the duty or is merely charged with such knowledge. We hold that the objective fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section 17(a)(4) so long as the use was not the result of mere negligence or a mistake of fact; subjective intent to violate a known fiduciary duty or bad faith is irrelevant.[7]
The weight of evidence in the instant matter requires a conclusion that Johnson knowingly used monies in the building contract funds established by Pierce, Elderkin and Noor for personal and other business expenses while a substantial portion of his debt to Cashway for materials and supplies on each of the three projects remained outstanding. There is nothing in the record to suggest that this use was the result of negligence or a mistake of fact. Because Johnson is a contractor who was the recipient of monies paid into building contract funds, he is charged with knowledge of his status as a trustee under the Michigan Building Contract Fund Act and his duties under that Act. In breaching his duty to pay materialmen such as Cashway in accordance with the statutory priority scheme, he created a debt which is nondis-chargeable under section 17(a)(4) of the Bankruptcy Act.
Accordingly, the judgment of the District Court is reversed.

. A literal reading of the “created by” language in section 17(a)(4) has been rejected by the Fifth Circuit in Carey Lumber Co. v. Bell, 615 F.2d 370, 375 (5th Cir. 1980), and John P. Maguire & Co. v. Herzog, 421 F.2d 419 (5th Cir. 1970), and by a district court in New York, Clarke & Rapuano, Inc. v. Morris Ketchum, Jr. and Associates (In re Morris Ketchum, Jr.), 409 F.Supp. 743, 745 (S.D.N.Y.1975). Otherwise section 17(a)(4) would have little meaning since most debts arise from some sort of contractual agreement.

. The lower courts’ reliance on Perez v. Campbell, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), for the proposition that the Supremacy Clause prevents recognition of Mich.Comp. Laws Ann. §§ 570.151-153, is misplaced. State law is merely a factor in the equation used to determine whether the fiduciary capacity requirement is satisfied as a matter of federal law, using federal standards.

. Mich.Comp.Laws Ann. § 570.151 provides:
In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes. As amended P.A.1966, No. 104, § 1, Eff. Oct. 1.

. Mich.Comp.Laws Ann. § 570.152 provides:
Any contractor or subcontractor engaged in the building construction business, who, with intent to defraud, shall retain or use the proceeds or any part therefor, of any payment made to him, for any other purpose than to first pay laborers, subcontractors and materialmen, engaged by him to perform labor or furnish material for the specific improvement, shall be guilty of felony in appropriating such funds to his own use while any amount for which he may be liable or become liable under the terms of his contract for such labor or material remains unpaid, and may be prosecuted upon the complaint of any persons so defrauded, and, upon conviction, shall be punished by a fine of not less than 100 dollars or more than 5,000 dollars and/or not less than 6 months nor more than 3 years imprisonment in a state prison at the discretion of the court.

.Mich.Comp.Laws Ann. § 570.153 provides:
The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment by him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

. In Bernard the bankrupt, the president of an insolvent corporation, appropriated a part of the corporation’s assets to discharge indebtedness of himself and his son, who was also an officer. In doing so he violated then section 15 of the New York Stock Corporation Law, Con-sol. Laws, c. 59, and committed a breach of duty as a fiduciary. A judgment recovered against him by the assignee of the corporation was held to be nondischargeable in bankruptcy. The Second Circuit stated that the bankrupt had knowingly committed a breach of duty as a fiduciary which was an appropriation within section 17. The bankrupt was charged with knowledge that the corporation was insolvent and knowledge of the law that prohibited preferential payments, although nothing was said as to such knowledge. In re Hammond, 98 F.2d 703, 705-06 (2d Cir.), cert. denied, 305 U.S. 646, 59 S.Ct. 149, 83 L.Ed. 418 (1938).

. Although the conclusions of the District Court and the Bankruptcy Court, that Cashway had conceded that Johnson was not guilty of any intentional fraud, are not probative in light of our holding, we have read the entire record in this case and there is no concession by Cashway that there was no intentional defalcation, misappropriation or bad faith on the part of Johnson. Cashway merely argued that it was not required to show bad faith. Cash-way’s complaint in the Bankruptcy Court states that the debtor knowingly converted and misappropriated funds held in trust and that these acts constituted fraud, embezzlement, misappropriation or defalcation while acting in a fiduciary capacity. Complaint ¶¶ 11, 12 (App. 7-8).
Although the dissent adopts the opinion of the District Court, that Cashway conceded that Johnson was not guilty of any intentional fraud, it does not point out where the concession was made. It is not possible to point to specific portions of the record to establish a negative but if such a concession appears on the record, it should be easy for the dissent to identify where and how it was made.