**In re Glen Roger THOMPSON a/k/a Roger Thompson, Judith Ellen Thompson a/k/a Judy Thompson, Debtors.**

**Moss W. YATER, Executor of Estate of Moss Yater, Deceased, Plaintiff,**

**v.**

**Glen Roger THOMPSON, Defendant.**

Bankruptcy No. 3–84–01873.
Adv. No. 3–85–1022.

United States Bankruptcy Court,
E.D. Tennessee.

Feb. 7, 1986.

Charles E. Rader, Knoxville, Tenn., for plaintiff.

Robert L. Cheek, Knoxville, Tenn., for defendant.

CLIVE W. BARE, Bankruptcy Judge.

At issue is the dischargeability of a debt allegedly arising from the breach of a fiduciary obligation. 11 U.S.C.A. § 523(a)(4) (West 1979). The action was instituted by Moss W. Yater, the son and executor of decedent Moss Yater. Defendant denies owing the debt plaintiff Yater contends is nondischargeable.[1]

## I

In March 1980, Moss Yater was indebted to the Pioneer Bank of Chattanooga, Tennessee, in the sum of $67,842,87. The debt, secured by publicly traded stock, was in default; the Bank had advised Mr. Yater that it intended to sell the stock in order to satisfy the debt. Mr. Yater borrowed $50,-000.00 from the defendant, Glen Roger Thompson, an attorney who had previously done some work for him. The $50,000.00 was paid to the Bank which, on June 3, 1980, forwarded part of the stock[2] to Thompson, who in turn delivered the stock certificates to E.F. Hutton, a stock brokerage firm.[3] About eight months later, part of the stock was margined (borrowed against) and an additional $17,842.87 was sent to the Pioneer Bank to pay its debt in full. Thereupon the Bank sent to Thompson certificates for 1,581 shares of United Services Life Insurance Company stock and 1,109 shares of Anderson, Clayton & Company stock. Yater's note to the Bank was also assigned to Thompson. According to Thompson, "In effect, I purchased the note from the Pioneer Bank and kept the stock in my possession as security for that loan."[4]

In April 1982, Thompson transferred his account with E.F. Hutton to Dean Witter Reynolds, another brokerage firm. The account and all of the securities were carried on the brokers' books in Thompson's name. Thompson caused the stock to be sold by Dean Witter Reynolds in November 1982. Net proceeds totaling $103,827.17 were credited to Thompson's account, resulting in a positive cash balance of $49,186.20 after payment of the $54,640.97 margin balance.

Plaintiff, executor of the estate of Moss Yater, contends that Thompson is indebted to the estate of decedent Moss Yater for the excess amount Thompson received from the sale of the securities over and above the amount owed by Yater to Thompson. Plaintiff avers that Thompson's indebtedness resulting from the stock sale is at least $40,781.69.

The parties have stipulated that Thompson loaned $67,842.87 to Moss Yater between May 21, 1980, and January 7, 1981.

---

1. Defendant scheduled a $10,000.00 debt to "Moss W. Yates, Exec. for Moss Yates" based on a promissory note. But the dischargeability of that debt is not in issue.

2. Pioneer Bank sent stock certificates issued to Moss Yater representing 2,600 shares of United Services Life Insurance Co. to Thompson's former law office.

3. Thompson testified he obtained a pledge agreement from Moss Yater. That document, returned to Moss Yater according to Thompson, is not a part of the record in this case.

4. Transcript of Proceedings at 23.

Plaintiff avers that Moss Yater paid Thompson $11,462.87 principal and $6,214.50 interest on this indebtedness between January 1, 1981, and May 11, 1982. Thompson denies receiving any payment.

Contending he made loans to Moss Yater in addition to those stipulated, Thompson denies owing any debt to Yater's estate as a result of the stock sale. In fact, Thompson maintains the net proceeds from the stock sale were insufficient to satisfy Moss Yater's debts to him.[5] Thompson testified that he loaned Moss Yater $2,000.00 in April 1981 to make an escrow payment to purchase a house and $37,800.08 in June 1981 as part of the purchase price.[6] Further, Thompson introduced his personal check, dated August 18, 1982, payable to Dean Witter Reynolds in the amount of $4,721.00, issued to keep the stock, which purportedly had fallen below the margin value, from being sold. Thompson says that prior to issuing his personal check he talked to Moss Yater who advised him he did not have the funds to pay the margin call.

Plaintiff Moss W. Yater testified that he was present during two conferences in July 1983, between Moss Yater, his deceased father, and Thompson. According to plaintiff, at the first conference, when his father asked Thompson what he had done with the stock, Thompson replied, "I cashed the stock."[7] According to plaintiff, at the second conference a few days later, Thompson told the Yaters he was working on two or three transactions he hoped would come through and that "[H]e needed to work a way to pay my dad back."[8] Thompson denies making these statements.

Plaintiff introduced a letter, dated May 11, 1982, from Thompson to his father which recites in part:

Please be advised that the interest which you paid to Coffeeco Investment Company on your indebtedness of $56,000.00 during the year 1981 was $6,214.50.[9]

Thompson's cross-examination testimony relative to this letter is as follows:

Q. Well, now, I read that letter, Mr. Thompson, to say that the principal balance on May 11, 1982, that Colonel Yater owed you was $56,000.

A. I think that would probably be correct.

THE COURT: It was probably what?

THE WITNESS: $56,000.

THE COURT: It was correct or incorrect?

THE WITNESS: I think it was probably correct, fifty-six.

BY MR. RADER:

Q. On May 11, 1982?

A. Yes, sir.

Q. Do you claim to have loaned Colonel Yater any more money after May 11, 1982?

A. Well, there was $37,800.08 on June 4 of 1981.

Q. I was asking you about after May 11, 1982.

A. Oh. I am sorry. After 1982?

Q. Yes.

A. May 11. Well, the $4,721 that I paid into the margin account.

Q. And that is all?

A. Yes, sir. That was—there was an indebtedness on the margin account

---

5. Thompson's bankruptcy schedules do not reflect a claim against Moss Yater's estate.

6. The only evidence proffered by Thompson to substantiate his testimony is a settlement statement identifying Thompson as the borrower in connection with the purchase of property located at 8129 Hayden Drive in Knoxville, Tennessee. The statement, dated June 4, 1981, reflects a $2,000.00 deposit and cash due from borrower in the amount of $39,805.28. No check or receipt evidences either alleged loan.

7. Transcript of Proceedings at 18.

8. Transcript of Proceedings at 19.

9. Plaintiff contends that Coffeeco Investment Company was a business name used by Thompson. Interestingly, the acknowledged interest payment of $6,214.50 is the amount of interest plaintiff alleges his father paid Thompson—but Thompson denies receiving—between January 1, 1981, and May 11, 1982, against the admitted principal indebtedness of $67,842.87.

which had nothing to do with the indebtedness that was due to Coffeeco.[10] Thus, Thompson maintains that Moss Yater's indebtedness to Coffeeco is to be distinguished from the margin account indebtedness and that the sum of the two exceeded $110,000.00, an amount exceeding the proceeds from the sale of Yater's stock.

## II

Section 523(a) of the Bankruptcy Code enacts in part:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.    .    .    .    .

(4) for fraud or defalcation while acting in a fiduciary capacity....

11 U.S.C.A. § 523(a)(4) (West 1979).

 Although the Bankruptcy Code does not include a definition of "fiduciary capacity," its meaning has been exhaustively considered in numerous decisions based on Code § 523(a)(4) and its progenitors. See 3 *Collier on Bankruptcy* ¶ 523.14[c] (15th ed. 1985). Since the Supreme Court's decision in *Chapman v. Forsyth*, 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844) (debt of a factor who retained proceeds from sale of his principal's goods dischargeable since factor was not a fiduciary debtor of his principal), courts have consistently held that the fiducial relationship necessary to except a debt from discharge exists only in cases involving express or technical trusts, as opposed to either a constructive or implied trust or a trust *ex maleficio*. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *Carlisle Cashway, Inc. v. Johnson*, 691 F.2d 249, 251 (6th Cir.1982). Because there is no indication in the legislative history that Congress intended to modify the long-standing meaning of the term "fiduciary capacity," Code § 523(a)(4) excepts a trust obligation from discharge *only* if the trust is an express or technical trust.

10. Transcript of Proceedings at 31–32.

11. Although a claim for $47,827.17 was filed on behalf of the estate of Moss Yater, it is not necessary for this court to determine whether Thompson owes a debt as a result of the stock

## III

 The court finds it is not necessary to resolve the disputed testimony in this proceeding. Assuming arguendo that Thompson owes a debt as a result of the November 1982 stock sale, plaintiff's proof does not establish the existence of a fiducial relationship between Thompson and Moss Yater. The proof only establishes that Thompson held or controlled stock owned by Moss Yater as security for a debt. There simply is no evidence in the record of an express trust whereunder Thompson was a trustee. Hence, in the absence of any fiducial relationship, Thompson's debt to the estate of Moss Yater would not be excepted from discharge under § 523(a)(4).[11]

This Memorandum constitutes findings of fact and conclusions of law, Bankruptcy Rule 7052.

sale. There are no funds available for distribution; thus it is not necessary to determine whether a debt exists. See 11 U.S.C.A. § 704(5) (West Supp.1985).