**In re Dan STEWART, Debtor.**

**E. Paul GETAZ, Plaintiff,**

**v.**

**Dan STEWART, Defendant.**

**Bankruptcy No. 90–21856–B.**
**Adv. No. 90–0180.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

Feb. 8, 1991.

James W. Surprise, Johnson, Grusin & Kee, Memphis, Tenn., for plaintiff.

David Doten, Memphis, Tenn., for debtor.

## MEMORANDUM OPINION AND ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

WILLIAM H. BROWN, Bankruptcy Judge.

This core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) challenges the dischargeability of a specific debt to the plaintiff under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4). For purposes of this opinion, the Court will only consider § 523(a)(4), and the Court concludes that the subject debt in the principal amount of $25,000.00, plus interest, is excepted from discharge. The following constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

1. During the applicable times, the defendant/debtor, Dan Stewart, was experienced in real estate investments and was engaged in the real estate business.

2. The plaintiff is a physician oncologist, who was not experienced in real estate investments or transactions. As a result, the plaintiff relied upon Mr. Stewart and Mr. Stewart's experience in the investment these parties made together.

3. The plaintiff and defendant became personal friends and discussed mutual investments. They determined to buy certain real estate and entered into a general partnership agreement under the name of Stewart–Getaz Investments for that purpose. (Tr.Ex. 1) The parties were each fifty percent (50%) general partners in the partnership, sharing profits and losses according to their partnership interests. *Id.*

4. Neither partner was entitled to receive any salary for his services to the partnership. *Id.*

5. The partnership borrowed 100% of the money necessary for the purchase and development of acreage in Shelby County, Tennessee, from the Community Bank of Germantown, Tennessee. Neither party invested personal funds in either the purchase of or construction on this property. Mr. Stewart was responsible for handling the financial and banking transactions for the partnership. For example, Mr. Stewart took care of the monthly draws from the bank for construction purposes and oversaw the construction process.

6. There is a dispute between the parties as to whether Mr. Stewart advised Dr. Getaz prior to the fact; nevertheless, in January, 1988, Mr. Stewart drew on the partnership line of credit at the Community Bank of Germantown in the amount of $50,000.00 and admittedly utilized that draw for personal purposes, intending to repay the funds over a short term. Dr. Getaz testified that he did not learn of this withdrawal until the late Spring of 1988. Mr. Stewart testified that he casually discussed the matter with Dr. Getaz over dinner in January, 1988, prior to the withdrawal. Notwithstanding this dispute, Mr. Stewart could not testify that Dr. Getaz had consented to his drawing on the line of credit.

7. The partnership was under financial pressure to dispose of the property and located a buyer who took over the loan, relieving the partners of their personal liability; however, Dr. Getaz was required to expend personal funds of approximately $1,000.00 for the closing of the sales transaction and approximately $500.00 in accounting fees.

8. Around the time of the closing, Mr. Stewart executed three notes payable to Dr. Getaz: one note in the amount of $28,652.74 represented one-half of the $50,000.00 draw on the line of credit plus accrued interest; the second note in the amount of $932.76 represented the closing costs expended by Dr. Getaz; the third note in the amount of $104,639.53 represented one-half of a $200,000.00 draw on the line of credit allegedly for the benefit of Mr. Stewart. However, the only amount asserted by the plaintiff to be excepted from discharge is the note for $28,652.74.

9. The partnership has now been dissolved.

10. The partnership agreement provided in pertinent part as follows:

6. *Salaries and Drawings*—No partner shall receive any salary for services ren-

dered to the partnership. Each partner may from time to time make withdrawals from the partnership so long as his capital account and his portion of the partnership profits year to date exceed the requested withdrawal and so long as the other partners agree to such withdrawal.

8. *Management, Duties and Restrictions*—The management of the day to day affairs of the partnership shall be by mutual consent of the partners who shall each have a pro rata authority in such management.

15. *Applicable Law*—The partnership agreement, the relations, rights and duties of the partners among themselves, and all matters pertaining to the partnership and the applicable property shall be governed by the Tennessee Law applicable to partnerships.

11. No payments were made by the debtor on the $28,652.74 note.

## CONCLUSIONS OF LAW

11 U.S.C. § 523(a)(4) provides as follows: (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

The phrase "while acting in a fiduciary capacity" obviously "qualifies the words 'fraud or defalcation.'" 3 King, COLLIER ON BANKRUPTCY ¶ 523.14 at 523–96 (15th Ed.1990). Defalcation may include "innocent defaults, so as to include all fiduciaries who for any reason were short in their account." Summers, "The Exception To Discharge In Bankruptcy For Defalcation By A Fiduciary," 92 Com.L.J. 314, 317 (Fall 1987) (hereinafter "Summers"), quoting *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 511–12 (2nd Cir.1937). In other words, a "simple failure to account for funds" may constitute a defalcation. Summers at 317, *quoting In re Waters*, 20 B.R. 277, 280 (Bankr.W.D.Tex.1982). Denying discharge for defalcation in the absence of fraudulent intent is justifiable because "the higher standards and duties imposed by the fiduciary relationship require a higher standard of performance by the fiduciary." Summers at 317–18.

■ In this Circuit, an objective standard was adopted under former Bankruptcy Act § 17(a)(4), which "charge[s] a bankrupt with knowledge of the law and ... does not weigh intent or motive" and the Court of Appeals for the Sixth Circuit found this standard for defalcation to be "consistent with the policy behind the bankruptcy laws of giving an honest debtor the opportunity for economic rehabilitation." *In re Johnson*, 691 F.2d 249, 255 (6th Cir.1982). This is so, according to the *Johnson* Court, because the requisite "bad act" of defalcation in a fiduciary capacity "is supplied by an individual's special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching those duties." *Id.* Defalcation may be found without "subjective intent to violate a known fiduciary duty," provided the defalcation "was not the result of mere negligence or a mistake of fact." *Id.* at 257.

■ Applying that law to the facts found in this proceeding, Mr. Stewart knowingly withdrew funds, thereby reducing the partnership line of credit, and he admittedly used those funds for his personal purposes. He has failed to repay or account to the partnership for those funds. The line of credit was partnership property, and Mr. Stewart had no right to use partnership property without the consent of the other partner. *See* Tr.Ex. 1, ¶ 6. Mr. Stewart stated that he could not testify that Dr. Getaz had consented. It cannot be said that Mr. Stewart's actions were a mistake of fact or mere negligence. Therefore, the Court concludes that a defalcation has been established by the proof.

The issue now presented is whether that defalcation occurred while the debtor was "acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). A fiduciary relationship for purposes of the Bankruptcy Code requires a technical or expressed trust relationship between the parties. *See, e.g., Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); 1 NORTON

BANKR.L. & PRAC. § 27.46 (1990); *In re Crowe*, —— B.R. —— unpub. opinion, Case No. 87–22203–K (Bankr.W.D.Tenn.1988).

This Court is aware that some courts and authorities have concluded that the term "fiduciary" in § 523(a)(4) is limited to a "class of fiduciaries including trustees of specific written declarations of trust, guardians, administrators, executors or public officers" and does not extend to general classes of fiduciaries such as partners. *In re Lewis*, 94 B.R. 406, 410 (Bankr. E.D.Va.1988); *see also* 3 King, COLLIER ON BANKRUPTCY ¶ 523.14 at 523–98. However, other courts have found the fiduciary obligation arising out of a partnership to be a basis for application of § 523(a)(4). *See e.g., Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986); *In re Mailath*, 108 B.R. 290 (Bankr.N.D.Okla.1989).

It is recognized that federal law controls § 523(a)(4) but that state law may be consulted to determine when a trust or fiduciary relationship exists. *See, e.g., Ragsdale v. Haller*, 780 F.2d at 796; *In re Interstate Agency, Inc.*, 760 F.2d 121, 124 (6th Cir. 1985); *In re Johnson*, 691 F.2d at 254; Summers at 318; 1 NORTON BANKR.L. & PRAC. § 27.48.

Both the Supreme Court and the Court of Appeals for the Sixth Circuit have recently instructed that bankruptcy courts must not "disregard unambiguous statutory language," *In re C–L Cartage Co., Inc.*, 899 F.2d 1490, 1494 (6th Cir.1990), and that "where the statute's language is plain, 'the sole function of the court is to enforce it according to its terms.'" *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989), quoting *Caminetti v. U.S.*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). This Court concludes that the language of § 523(a)(4) is expressed clearly and that the position of Mr. Stewart as a general partner is "a fiduciary capacity" included within the scope of that statute. This is so because the partnership agreement at ¶ 15 makes Tennessee law applicable to the duties of these partners. (Tr.Ex. 1) The debtor was charged with knowledge of the state law made applicable in the partnership agreement which he executed. *In re Johnson*, 691 F.2d at 255. And, Tennessee Code Annotated § 61–1–120, part of the Tennessee Uniform Partnership Act, provides as follows:

**61–1–120. Fiduciary duty of partners.** (a) Every partner must account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the formation, conduct or liquidation of the partnership or from any use by him of its property.

The debtor's unauthorized use of the partnership line of credit for his own benefit and without the consent of the other partner and the debtor's failure to account to the partnership for the $50,000.00 withdrawn are violations of § 61–1–120, which clearly establishes a trustee role and fiduciary duty for each general partner. This statutory fiduciary capacity clearly satisfies 11 U.S.C. § 523(a)(4)'s "fiduciary capacity" language.

As a result, the debtor's obligation to this plaintiff is excepted from discharge in the amount of the benefits denied the other fifty percent partner, or $25,000.00.[1] The complaint seeks interest on the debt and it will be allowed at the statutory rate from the time of the breach of fiduciary duty when the money was withdrawn on January 26, 1988.

IT IS THEREFORE ORDERED:

1. That the debt of $25,000.00, plus interest at the statutory rate from January 26, 1988, is excepted from discharge under 11 U.S.C. § 523(a)(4); and

2. A judgment shall issue accordingly.

---

1. It is noted that the partnership has been dissolved; otherwise, the debtor would be liable to the partnership for the full $50,000.00.