In re CHRIS J. ROY, A LAW
CORPORATION, Debtor.

In re Chris J. ROY, Debtor.

Camille F. GRAVEL, Jr., Richard
V. Burnes, Plaintiffs,

v.

CHRIS J. ROY, a LAW COR-
PORATION, and Chris J.
Roy, Defendants.

Bankruptcy Nos. 89BK–
80155, 89BK–80143.
Adv. Nos. 89AP–80044, 91AP–8006.

United States Bankruptcy Court,
W.D. Louisiana,
Alexandria Division.

July 1, 1991.

Charles S. Weems, III and Randall L. Wilmore, Alexandria, La., for plaintiffs.

H. Gayle Marshall, Lake Charles, La., for debtor.

## REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

These matters come before the Court for a determination of the dischargeability of a debt. This is a Core Proceeding pursuant to 28 U.S.C. Section 157(b)(2)(I) inasmuch as it involves the determination of the dischargeability of particular debts. For the following reasons, there will be judgment for plaintiffs against the individual defendant, but rejecting the demands against the corporate defendant.

This Court has jurisdiction pursuant to 28 U.S.C. Section 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.01 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the bankruptcy court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. BACKGROUND

These proceedings were instituted by the plaintiffs, Camille F. Gravel, Jr., and Richard V. Burnes against the debtors, Christopher J. Roy (individually) and Chris J. Roy, a Law Corporation. These debtors originally filed voluntary petitions for relief under Chapter 11 on February 6, 1989 and February 8, 1989, respectively. Both cases were later converted to Chapter 7.

The parties here were partners in a law firm known as Gravel, Roy and Burnes ("GRB") which operated for a period of approximately ten years between 1970 and 1980 under an oral partnership agreement. In January of 1980, Roy gave notice of his intention to withdraw from the partnership. Various written agreements were executed regarding the dissolution of the partnership. Those agreements have been the subject of extensive litigation.

In 1982, Roy instituted a suit for a declaratory judgment in the 9th Judicial District Court for Rapides Parish under Docket No. 123,079 seeking a declaration that the agreements constituted a partnership and were terminable at will. Gravel and Burnes filed a reconventional demand for an accounting, specific performance and damages. The trial court entered Reasons for Judgment on October 7, 1988. A Judgment was entered on November 16, 1988. For an understanding of the trial court's findings, it is sufficient to quote from the joint Pre–Trial Stipulation of the parties which, in pertinent part, reads as follows:

"After extended pre-trial motions and discovery the state court trial was held on July 26, 27 and 28, 1988. For written reasons assigned October 7, 1988, the trial court in judgment signed November 16, 1988, ruled in favor of Gravel and Burnes, and against Roy, on all material issues, holding:

(1) that the partnership Gravel, Roy and Burnes was dissolved as of January 19, 1980;

(2) that the Dissolution Agreement entered into by the parties was valid, binding and fully enforceable;

(3) that Roy and his law corporation were required to perform in accordance with the Dissolution Agreement;

(4) that Gravel was entitled to judgment against Chris J. Roy and Chris J. Roy, A Law Corporation, in solido, in the amount of $316,696.98, subject to certain credits;

(5) that Burnes was entitled to a judgment against Chris J. Roy and Chris J. Roy, A Law Corporation, in solido, in the amount of $216,220.19, subject to certain credits; and,

(6) requiring Roy to account for certain other GRB cases, and directing the manner in which future performance should occur under the Dissolution Agreement." [1]

An appeal followed to the Court of Appeal, Third Circuit, State of Louisiana, which affirmed the decision of the trial court and assigned written reasons on October 3, 1990. *See Roy v. Gravel*, 570 So.2d 1175 (La.App. 3d Cir.1990). Writs were denied by the Supreme Court of the State of Louisiana on January 18, 1991. *See Roy v. Gravel*, 573 So.2d 1118 (La. 1991).

This matter was set for trial on May 24, 1991, before the undersigned. The entire record in the State Court proceedings was introduced as a joint exhibit and further testimony was adduced. The matter was taken under advisement and briefs were filed by the plaintiffs and the individual defendant, Chris J. Roy. The parties stipulated that the facts found by the state courts were correct. This Court has read the transcripts in the state court proceedings in their entirety. A copy of the Reasons for Judgment of the trial court is attached as Exhibit A to the "Addendum to Disclosure Statement," filed by debtor on November 7, 1989, in Bankruptcy Case # 89–80143–A11. A copy of the judgment of the trial court is attached hereto as an Appendix.

## B. CONTENTIONS OF THE PARTIES

The plaintiffs assert that the claims represented by the judgment are non-dischargeable under 11 U.S.C. 523(a)(4) and (6) inasmuch as plaintiffs maintain the claims arose by virtue of a defalcation while acting in a fiduciary capacity and/or were for

---

**1.** The Pre–Trial Stipulation continues by reciting that the judgment of the trial court was affirmed by the Third Circuit Court of Appeal, State of Louisiana, and that the Supreme Court of Louisiana denied writs. Then the stipulation recites "... [t]his judgment is not final and execxutory." This statement is incorrect and must be read "now final and executory." See Article 2166, Code of Civil Procedure.

willful and malicious injury to another person or the property of another person. Defendant maintains that his actions constitute a simple breach of contract, that "the determination of a fiduciary relationship between partners must be determined by both state law and federal bankruptcy law concepts," and that the actions of debtor do not constitute a defalcation or a willful and malicious injury to another person or to the property of another person.

### C. APPLICABLE LAW

*(1) Defalcation in a Fiduciary Capacity*

■ Generally, the requisite proof in an action under Section 523 is now conclusively established to be a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. ——, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). *Compare: Matter of Foreman*, 906 F.2d 123 (5th Cir.1990).

The exception to the discharge presently recognized in 11 U.S.C. 523(a)(4) first appeared in the Bankruptcy Act of 1898 at which time the provision excepted from discharge those debts "created by [a debtor's] fraud, embezzlement, defalcation or misappropriation while acting as an officer or in any fiduciary capacity." Section 17(a)(4) of the Bankruptcy Act. This provision of the Bankruptcy Act and the present Code provision encompass a dual inquiry into both state and federal law questions, which inquiry has been described as follows:

"The authority to regulate bankruptcy is granted exclusively to the federal government in the Constitution. The meaning of the Bankruptcy Code is determined by the intent of Congress in adopting the Code. It is clear that it is a question of federal law as to the meanings of the terms 'defalcation' and 'fiduciary,' both of which are central to the exception to discharge for defalcation while acting in a fiduciary capacity. State law may be a factor in the decision of a bankruptcy court, particularly in establishing the legal basis for the trust relations. The interplay between federal and state law involves the determination by a bankruptcy court that a fiduciary relationship is established by state law,

that the trust falls within the meaning of that term as allowed in bankruptcy proceedings, and that a defalcation as interpreted by federal law occurred."

Summers, The Exception to Discharge in Bankruptcy for Defalcation by a Fiduciary, 92 Commercial Law Journal (No. 3, 1987), pages 316–317 (footnotes omitted) [hereinafter "Summers"]. These Reasons for Decision will now address the "defalcation" inquiry.

#### (a) Defalcation

The term "defalcation" was defined by Judge Learned Hand as follows:

"Colloquially perhaps the word 'defalcation' would nearly imply some moral dereliction, but in this context it may have included innocent defaults, so as to include all fiduciaries who for any reason were short in their account … he is guilty of 'defalcation' though it may not be a 'fraud,' or 'embezzlement,' or perhaps not even a 'misappropriation.'"

Summers, *supra,* page 317, quoting *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, at 511–12 (2nd Cir.1937) page 317. In *Herbst,* a receiver received and expended funds which a court had allowed him as commissions prior to the time the order approving same was final. The order did not survive an appeal, and the resultant claim against the receiver was determined non-dischargeable in bankruptcy. In *In re Crosswhite*, 91 B.R. 156 (Bkrtcy.M.D.Fla. 1988) the Court observed:

"For purposes of Section 523(a)(4) defalcation while acting in a fiduciary capacity is defined as 'the slightest misconduct, and it need not be intentional conduct; negligence or ignorance may be defalcation.' *Morales v. Codias*, 78 B.R. 344 at 346 (Bkrtcy.S.D.Fla.1987), *citing In re Owens*, 54 B.R. 162 (Bkrtcy. S.C.1984).

Further, a defalcation may exist where even the merest deficit is caused by the Debtor's misconduct, even if the Debtor's conduct does not benefit him…."

91 B.R. 156, 160.

■ Thus, it would appear that a defalcation may be established by a lesser show-

ing than that required for fraud, embezzlement, or larceny, with less of a "regard to intent or motive ... [which] is consistent with the general policy in bankruptcy of giving an honest debtor a fresh start, since the higher standards and duties imposed by the fiduciary relationship require a higher standard of performance by the fiduciary. Some courts have held that defalcation requires a 'knowing misappropriation' or at least a knowledge of the duty to act as a fiduciary." Summers, page 318.

In *Matter of Moreno*, 892 F.2d 417 (5th Cir.1990) the Fifth Circuit observed that "[a] defalcation is a willful neglect of duty, even if not accompanied by fraud or embezzlement." A prior Fifth Circuit holding in *Carey Lumber Company v. Bell*, 615 F.2d 370 (1980), dealing with former Section 17(a)(4) of the Bankruptcy Act, noted that the debtor was "charged with knowledge of his legal duties under the lien trust laws...." *Ibid*, Page 376.

The inquiry, however, does not end here, inasmuch as the plaintiffs must also establish that a fiduciary relationship existed between the parties. These Reasons for Decision now address the scope of that inquiry.

### (b) Fiduciary Capacity

■ Contrasted with the relative ease of establishing a defalcation, the next inquiry requires the plaintiffs to establish that a technical or express trust existed. The historic definition of the term in bankruptcy lies in the case of *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), in which the Supreme Court determined that the exception does not apply to trusts *ex maleficio* which arise from the wrongdoing out of which the debt arose. A constructive trust is not sufficient to create a fiduciary relationship. *Matter of Angelle*, 610 F.2d 1335 (5th Cir. 1980). Further, while the "scope of concept 'fiduciary'" is determined by federal law, state law in turn "takes on importance in determining when a trust exists. The state may impose trust-like obligations on those entering into certain types of obligations, and these obligations may make a contracting party a trustee. Of course, the

trust must arise prior to and without reference to the act creating the debt. We also believe that state law may play importance in determining whether a specific case involves an express trust." 610 F.2d at 1341. *See also Carey Lumber Co. v. Bell, supra.*

Summers' discussion of legal relationships reviewable under 11 U.S.C. 523(a)(4) includes (at page 325) the relationship of a partner to the partnership, citing at the footnote *Ragsdale v. Haller*, 780 F.2d 794 (9th Cir.1986) and *In re Hurbace*, 61 B.R. 563 (Bankr.W.D.Tex.1986).

Cases considering the dischargeability of a former partner's debts are numerous. These Reasons for Decision will address only a few. *In re Stone*, 90 B.R. 71 (Bkrtcy.S.D.N.Y.1988) finds a former business partner's debts non-dischargeable and also, while noting that the bankruptcy court makes the ultimate determination on dischargeability, invokes the doctrine of collateral estoppel to bar relitigation of the factual issues underlying that determination, citing *In re Wallace*, 840 F.2d 762, at 764 (10th Cir.1988), and *Carey Lumber Co. v. Bell, supra*. A similar result was reached in *In re Tsamasfyros*, 114 B.R. 721 (D.Colo.1990), which also observed that if the judgment of the state court is given preclusive effect, the calculation of damages may not be attacked in the bankruptcy case. In *In re Stewart*, 123 B.R. 817 (Bkrtcy.W.D.Tenn.1991), the Court, applying Tennessee law, found a partner's debt to be non-dischargeable as a defalcation, relying on Summers and the Sixth Circuit's holding in *In re Johnson*, 691 F.2d 249 (1982).

Cases determining the debt to be dischargeable notwithstanding section 523(a)(4) generally do so where the state law does not support a fiduciary duty to the plaintiffs and/or the trust is one that arises *ex maleficio*. *Matter of McCraney*, 63 B.R. 64 (Bkrtcy.N.D.Ala.1986) determined that an insurance agent was not a fiduciary of the company to which the premiums were owed. *In re Weidenhammer*, 82 B.R. 383 (Bkrtcy.E.D.Pa.1988) found no duty of partners to each other under New Jersey law. *See also In re Napoli*, 82 B.R.

378 (Bkrtcy.E.D.Pa.1988). In *In re Eames*, 108 B.R. 742 (Bkrtcy.D.Mont.1990) the court found that a partnership could not prevail against a partner in a dischargeability action because, under the applicable law, the trust duty arose *ex maleficio*, i.e., only when the partner derived profits without the consent of the partnership. That finding was, however, of cold comfort to the debtor, since the court found that the debt due the partnership was non-dischargeable under 523(a)(6). *In re Crosswhite supra,* found the debt of a partner to his former partner non-dischargeable as an embezzlement, observing that the partnership itself "would have a viable claim" (at page 159) but found for the plaintiff-partner as to a defalcation under North Carolina law.

In an opinion that appears to reflect a minority view, the Court in *In re Reeves*, 124 B.R. 5 (Bankr.N.H.1990), held that the concept of a fiduciary under the Bankruptcy Code was narrower than the concept under state law and excluded partners, despite state law to the contrary, insisting that the supremacy of federal law controlled. The Reeves Court held that there was no evidence of a formal or express trust between the parties.

■■■ In Louisiana the fiduciary duty of a partner runs not only to the partnership but also to the partners. The rule is clearly stated in *Louisiana Civil Code* article 2809 as follows:

> "A partner owes a fiduciary duty to the partnership and to his partners. He may not conduct any activity, for himself or on behalf of a third person, that is contrary to his fiduciary duty and is prejudicial to the partnership. If he does so, he must account to the partnership and to his partners for the resulting profits."

Although that article was enacted in 1980, it is based on prior articles in the Civil Code of 1870. The case law prior to 1980 also imposes a fiduciary duty of partners in their dealings with one another. *See e.g. Henley v. Haynes*, 376 So.2d 1030 (La.App. 1st Cir.1979); *W.A. McMichael Const. Co. v. D & W Properties, Inc.*, 356 So.2d 1115 (La.App. 2d Cir.1978).

### (2) Willful and Malicious Injury

Plaintiffs further urge as an additional or alternative remedy the theory that defendant is not entitled to a discharge from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." In *Chrysler Credit Corp. v. Perry Chrysler Plymouth*, 783 F.2d 480 (5th Cir.1986), the Fifth Circuit, after an extensive analysis of Louisiana delictual actions relating to ownership of movables, concluded that where a corporate officer was required to segregate sale proceeds affected by a floor plan mortgage from the corporation's general funds, and transfer same to the lender, a diversion of the funds to the officer's own personal use constituted a conversion of same apart from his personal liability as a corporate officer, which liability sounded in tort.

As noted *supra*, bankruptcy courts considering 523(a)(4) sometimes address 523(a)(6), occasionally affording relief under the latter provision where it is denied under the former. The Fifth Circuit reached a similar result where it concluded that the proof of a corporate officer's negligence was insufficient to hold him personally liable for an entire corporate debt but held that a portion of the same which he had taken to Las Vegas for gambling was non-dischargeable as a tortious conversion. *Chrysler Credit supra*. In that matter, the Court described the remedy in Louisiana as follows:

> "In Louisiana, delictual actions based on unlawful interference with the ownership or possession of movables are frequently termed actions for 'conversion.' The Louisiana Court of Appeals has said, '[t]he common law tort of conversion—a distinct act of dominion wrongfully exerted over another's property in denial of or inconsistent with the owner's rights therein—has been recognized by Louisiana Courts for over a century as an offense or quasi offense under LSA–CC 2315.' Despite the similarity in labels, the Louisiana action is only rarely completely identifiable with actions based on the common-law tort. In this area, there-

fore, as Professor A.N. Yiannopoulas has written, the law of Louisiana appears to be a hybrid, with characteristics borrowed from both the common law and the civil law. The Louisiana Supreme Court held in *Importsales, Inc. v. Lindeman* [231 La. 663, 92 So.2d 574 (1957)] that Louisiana does, however, recognize a cause of action for the wrongful act of repudiation of the owner's right to property, or some exercise of dominion over it inconsistent with the owner's right. Explaining the basis for this cause of action, Louisiana courts have cited with approval Dean Prosser's analysis:

'The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights.... Persons ... exercise acts of ownership at their peril, and must take the risk that there is no lawful justification for their acts.'

Thus, the focus is on the act committed in order to determine whether it constitutes a tort; whether the act was done intentionally or negligently is of no moment."

783 F.2d 480, pages 483–484, footnotes omitted.

Having discussed the applicable law regarding those exceptions to the discharge on which the plaintiffs rely, these Reasons for Decision now address the actions of the debtor, first addressing the plaintiffs' claims that debtor committed a defalcation while in a fiduciary capacity.

### D. WAS THERE A DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY?

In view of the stipulation of the parties that the facts as found by the state courts are correct, according collateral estoppel to those findings is appropriate. *Carey Lumber Co. v. Bell, supra.* The trial court described debtor's conduct with regard to performance under the agreements as follows:

"For a period of time, Roy performed in accordance with the agreements, and as the casework assumed by him was completed, the fees paid were duly accounted for under the terms of the agreement. In December 1980, Roy notified Gravel and Burnes that the dissolution agreements were unsatisfactory and that, as a partner, he was terminating the relationship. Roy still continued through 1981 to settle some casework assumed by him and account for the fees paid, pursuant to the terms of the agreement. In September 1981, Roy again wrote Gravel and Burnes and indicated he would no longer handle cases of the former partnership. Roy wrote to Gravel and Burnes again in April 1982 and reiterated his intention to work no further on casework of the former partnership. Following his April 1982 notification, Roy ceased to comply with the terms of the agreement and has taken no further action to conclude the cases provided for in the agreement or to deposit any fees paid under the terms of the agreement."

Reasons for Judgment, page 2, quoted by the Third Circuit at 570 So.2d 1175 at 1178.

Counsel for Debtor argues as follows:

"The recent case of *Matter of Moreno,* 892 F.2d 417 (5th Cir.1990) fixed the Fifth Circuit standard for defalcations, that being 'willful neglect of duty, even if not accompanied by fraud or embezzlement.' This standard requires intent to violate a known duty. Did Chris Roy intend to violate a known duty? It is submitted that he did not.

The Court of Appeals confirmed that the clients could discharge the partnership at any time—even after termination of the partnership. See judgment of Third Circuit Court of Appeals in record. When the original partnership was discharged by the individual clients (the testimony of which is uncontroverted at the trial court level, Transcript p. 45), Chris Roy considered his duty to his former partners terminated relative to those cases. Thereafter, he paid to his former partners the Court costs advances of the former partnership only. The actions which the plaintiffs complain of all oc-

curred after the discharge of the former partnership by the various clients. If Chris Roy did not consider that he had any duty to his former partners (testimony of Chris Roy at dischargeability hearing), how could he ever commit a willful neglect of that duty? His actions were willful, but were not performed as a conscious neglect of a known duty. Chris Roy could have only had the intent to violate a duty if he felt he was a fiduciary with a duty, which he did not. This is evidenced by his testimony and his conscious actions not to cash the checks of Gravel and Burnes."

Post–Trial Memorandum, pages 6–7.

█ Debtor's argument under *Moreno* must fail. Contrary to debtor's assertion, that case held only that a defalcation was a "willful neglect of duty." It did not impose a non-dischargeability burden of proving that debtor had both a foreknowledge of the duty and an intent to violate same. *Moreno* is silent regarding debtor's knowledge of his duty. In that case, after first noting that the debtor there did not dispute the fact that he owed a fiduciary duty to his former employer, the Court observed that "[t]his duty encompassed, at least, a responsibility not to lend ... [the employer's] money to himself or corporations controlled by him on less than an arms-length basis...." Nothing in *Moreno* disapproves of the prior holding in *Bell* charging the debtor with knowledge of his duty irrespective of *scienter*. *Bell* further noted that there was no requirement that the misappropriation be shown to be intentional or that the funds be diverted to the bankrupt's own benefit. Debtor here clearly enjoyed the fruits of the ill-gotten gains. Moreover, the Fifth Circuit's opinion in *Bell* casts doubt as to the continuing viability of "the rule that a mistake of fact may take a misappropriation out of the ambit of 17(a)(4) [of the Bankruptcy Act]...." *Ibid* page 376.[2] Here, debtor has conceded the accuracy of the State court findings of fact, which scarcely favor debtor.

Although the Fifth Circuit does not designate its test for defalcation as an objective one, other Courts, in adopting the *Bell* test, have so described the test. *See E.G., In re Johnson,* 691 F.2d 249 (6th Cir.1982), which, relying on *Carey v. Bell,* described the standard as follows:

"An objective standard for finding a defalcation, that does charge a bankrupt with knowledge of the law and that does not weigh intent or motive, is consistent with the policy behind the bankruptcy laws of giving an honest debtor the opportunity for economic rehabilitation. *See Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). Exceptions to the general rule of discharge exist for certain types of 'bad acts.' *See* 11 U.S.C. Sections 35(a)(2), (4), (8). Although the 'badness' of fraud, embezzlement or misappropriation is readily apparent, creating a debt by breaching a fiduciary duty is a sufficiently bad act to invoke the section 17(a)(4) exception even without a subjective mental state evidencing intent to breach a known fiduciary duty or bad faith in doing so. This is because the requisite 'badness,' to conform with the spirit of the bankruptcy laws, is supplied by an individual's special legal status with respect to another, with its attendant duties and high standards of dealing, and the act of breaching these duties."

691 F.2d 249, 252–256.

"Finally, measuring 'defalcation' against an objective standard prevents ignorance of the law from becoming a defense to nondischargeability and provides an incentive for individuals, such as Johnson, who are engaged in occupations subject to special statutes to apprise themselves of their obligations under the law.

For the above-mentioned reasons, we conclude that a bankrupt is chargeable with knowledge of the law. The character of the liability imposed upon a fiduciary for appropriating property held by him in trust is the same whether he has actual knowledge that the law imposes the duty or is merely charged with such knowledge. We hold that the objective

---

**2.** Section 523(a)(4) is the successor of Section 17(a)(4) of the Bankruptcy Act.

fact that monies paid into the building contract fund were used for purposes other than to pay laborers, subcontractors or materialmen first is sufficient to constitute a defalcation under section 17(a)(4) so long as the use was not the result of mere negligence or a mistake of fact; subjective intent to violate a known fiduciary duty or bad faith is irrelevant." 691 F.2d 249, at 257 (footnote omitted).

An objective standard in this regard is totally consistent with the intention of Congress in carving out certain exceptions to discharge for categories of debts for which the creditor's interest in repayment outweigh the debtor's interest in a fresh start. *Grogan v. Garner, supra.*

Counsel for debtor argues that debtor perceived that his duty to his former partners terminated with the discharge of the former partnership by the clients. Since debtor is charged with the duty here, irrespective of his knowledge or lack thereof, this argument must fail.

■ It is sufficient here that Roy's acts were willful, for he is charged with the knowledge of the duty. Nor does this Court find any redeeming effect, as argued by counsel to debtor, in the fact that debtor did not cash the checks (totalling some $12,000.00) sent to him by Gravel and Burnes but held them until such time as he surrendered them to his trustee in bankruptcy. Debtor failed to account for the much larger sums for which these plaintiffs have already received judgment. Suffice it to say here that, had debtor been sincere in this regard, as counsel for plaintiffs argue, "[h]e could have segregated and maintained the funds for later direction by the Court if he felt he had some legitimate legal reason for failing to deliver the money, but he chose not to do so, apparently thinking that he could expend his partner's money for his personal use and benefit with impunity." Plaintiff's Post Trial Memorandum, page 17.

Moreover, debtor's protestations of innocence here are directed to his misperception of his duty, based upon his interpretation of the legal effect of the dissolution of the original partnership, this despite the un-equivocal holding of the state court that the partnership continued a fictional existence for dissolution purposes. These Reasons for Decision find no support for converting his ignorance of the law, or mistake in law, into a mistake of fact.

■ Whether a fiduciary relationship existed prior to the misappropriation is the next issue under the defalcation analysis. It is significant in the instant case that the trial and appellate decisions both recognized the binding nature of the contracts or dissolution agreements at issue as arising under applicable partnership law. In its opinion, the Third Circuit observed:

"As stated earlier, we affirm the conclusions of the trial court. The dissolution agreement was just what the parties called it, a dissolution agreement. In it they recognized that their former partnership had terminated at the close of the business day of January 19, 1990. The dissolution agreement was a detailed agreement between the three of them to govern the winding down of the affairs of the partnership.

A private settlement and accounting of partnership affairs is binding on the parties consenting thereto. *Douglas v. Thomas,* 489 So.2d 449 (La.App. 4th Cir. 1986). Contracts have the effect of law for the parties. La.C.C. art. 1983. Contracts must be performed in good faith. *Id.*

The appellants further argue that even if the agreement was not a new partnership agreement, but a dissolution agreement, it nevertheless has no termination date and under the law presently codified in La.C.C. art. 2024, it may be terminated at the will of any party by giving proper notice. We reject this argument because the dissolution agreement is not one without a specified duration. Its duration is necessarily coterminous with that of the fictional existence of the partnership, GRB. This court has previously stated:

'A dissolved partnership maintains a fictional existence with respect to its past transactions and existing assets, until all of its affairs are wound up

and completed. This fictional existence permits the partnership to liquidate its affairs, perform existing contracts, collect its debts, pay its obligations and distribute its assets according to the partnership agreement.' *Edco Properties v. Landry*, 371 So.2d 1367, 1373–1374 (La.App. 3rd Cir.1979), writ denied, 375 So.2d 945 (La.1979). This rule was continued in La.C.C. art. 2834, adopted in 1980 to become effective January 1, 1981: 'A partnership retains it juridical personality for the purpose of liquidation.' Thus, the partnership, GRB, continues to exist (even to this day apparently) and it does not go out of existence until all of its affairs are wound up. The dissolution agreement has a temporal existence exactly the same as that of the partnership." 570 So.2d 1175 at 1181.

These reasons for decision have previously set forth the tests under the law for concluding that a fiduciary relationship exists. Applying those tests to the stipulated facts and considering the foregoing analysis of the contracts by the state courts, the conclusion is inescapable that Roy was charged with a duty to the plaintiffs under 11 U.S.C. 523(a)(4) and as a fiduciary under Louisiana law, and that the duty was breached. Even were this Court to adopt the position taken by the *Reeves* Court, *supra*, holding that state law is not an appropriate consideration, on these facts the express undertaking by contract of these parties would appear to satisfy even that Court.

Accordingly, the indebtedness represented by the judgment entered by the Ninth Judicial District Court, as affirmed by the Third Circuit Court of Appeal, writs having been denied by the Supreme Court of Louisiana, is determined to be non-dischargeable in the bankruptcy case of Chris J. Roy, Sr., pursuant to 11 U.S.C. Section 523(a)(4). Since only an individual is eligible for a discharge under 11 U.S.C. 727(a)(1), all demands against Chris J. Roy, A Law Corporation, must be denied. These Reasons for Decision will now address whether the indebtedness is also non-dischargeable as to the individual debtor under 11 U.S.C. 523(a)(6).

### E. WAS THERE WILLFUL AND MALICIOUS INJURY?

Plaintiffs rely upon the holding in *Chrysler Credit supra*, in suggesting that Section 523(a)(6) excepts Roy's debts from discharge. Counsel for debtor somewhat blithely asserts that that section has "consistently been held ... [to] relate ... to torts and not to contracts," citing 3 Collier on Bankruptcy (15th Ed.1991). This oversimplified assertion ignores not only *Chrysler Credit* but also the cases dealing with partnerships, *supra*.

From the findings of the state court, as noted previously, there can be no doubt that Roy's acts or inactions in this matter were willful and that he exercised dominion over the cases which comprised assets of GRB. This was inconsistent with the rights of the plaintiffs. *Chrysler Credit, supra*. Lest there be any doubt as to the willfulness of debtor's actions, the rationale for debtor's decision is reproduced below in his own words. In exhibit Gravel 12, a memorandum from debtor to plaintiffs, debtor writes as follows:

"Camille and Richard

Re: CASES

Camille and Richard, I hate to keep complaining, but I have finally reached my wit's end. I can no longer work the cases I am working and spend the time away from my office that they necessitate for the little that I receive in return. I am physically tired, and it appears that no amount of speaking with you all changes anything, and I suppose that is the way it will be.

For instance, it was agreed that some type of rent, at least the amount to pay the not on the office, etc. would have been forthcoming; however, nothing has been done in that regard, and any questions with respect to my receiving a fair share for my work are met with some type of case comparison studies to be made. When we entered into the agreement, I felt that both of you would be practicing together and that the amount

of work which I would produce would be equal if not exceeded by what remained at the firm; that has not been the case. I do not mind working for our former clients; however, I cannot see Camille's receiving 30% on each case for cases worked by his employees, whereas I receive nothing for my time.

In any event, since I physically cannot continue at this pace, it appears to me appropriate that we compose a letter to the clients who remain and inform them of their choices to (1) retain whomever they wish in the former firm; (2) discharge all members of the former firm and retain counsel of their choice; and/or (3) make an agreement which would compensate me for my time and effort which cannot possibly be itemized on a day to day basis so that whatever cases I work, I get the same 30% that Camille gets...."

In the trial court debtor testified as follows:

Q. "And so then in April of 1982 you just finally stopped (Interrupted)

A. '82 .. by that time I was at my wit's end and ... I had been working on the cases that were coming up in '82 for several years, by that time I was spending my own money on some of them and my other law firm to get them to the position of settling. Clients were writing them letters and telling them they didn't want them. Clients were retaining me, according to the agreement as I saw it and according to what we had understood, and as a consequence of that I just finally stopped it."

Trial transcript, page 58, lines 14–25.

These Reasons for Decision now address whether debtor's conduct was malicious, i.e., "without just cause or excuse." *Chrysler Credit*, page 486. In the state courts, he unsuccessfully defended his course of action on various theories falling into two categories. One category of theories was based on debtor's interpretation of the partnership agreement and its legal effect. For example, debtor contended the agreements were terminable at will. The

trial court expressly rejected this contention at page 4 of its opinion. A similar theory, that an inadvertent partnership was created by the agreement, died a similar death in the trial court's opinion, also at page 4.

Roy's second category of theories centered on the contention that there were ethical problems with the contractual relationship based upon his interpretation of the Code of Professional Responsibility. The Third Circuit also rejected these contentions, noting as follows:

"With these things in mind, we fail to see how it can be said that the termination of the partnership agreement somehow restricted the right of any partner to practice law....

Finally, the provisions of the dissolution agreement which allocate fees generated from GRB contingency fee contracts do not violate Rule 1.5 of the Rules of Professional Conduct...."

570 So.2d 1175 at 1185.

On the ethical matters, during the hearing before this Court on the trial date, Roy again urged his ethical beliefs regarding his actions, referring to same while observing that once he left the law firm in 1980, he was forced to pay the costs of operating his own office, and was in fact making less money than he previously earned. During that testimony, he again used the phrase "[at his] wit's end," which appears in both the memorandum and trial court testimony set forth above. Taken in the context in which the references were made, it appears that debtor was continually at his wit's end, due not to considerations arising from ethical concerns or relating to his contentions regarding the viability or enforceability of the agreements, but clearly due only to the perception that he was not receiving what he considered to be appropriate compensation for performing his obligations to the plaintiffs. In the final analysis, debtor's ethical considerations were at all pertinent times, including during the hearing in this Court, mere window-dressings, obfuscating debtor's desire to extricate himself from an unsatisfactory business arrange-

ment of his own making. No just cause or excuse is here served.

Accordingly, these Reasons for Decision conclude that the actions of the individual debtor here constituted willful and malicious conduct under 11 U.S.C. 523(a)(6). Inasmuch as a corporation is not entitled to a discharge under Section 727, as set forth above, the conclusion reached as to the corporate debtor on the 523(a)(4) issue is also reached as to the 523(a)(6) issue.

## CONCLUSION

For the reasons previously set forth, the demands of the plaintiffs against the defendant Chris J. Roy, A Law Corporation are *rejected.* There will be judgment herein in favor of the plaintiffs and against the defendant Chris J. Roy, decreeing the debts due the plaintiffs, in accordance with the judgment rendered by the Ninth Judicial District Court in Suit No. 123,079, nondischargeable. A separate, conforming judgment will enter.

## APPENDIX

Civil Suit No. 123,079

9th Judicial District Court

Parish of Rapides

State of Louisiana

Christopher J. Roy

versus

Camille F. Gravel, Jr. and

Richard V. Burnes

Filed December 1, 1988

### JUDGMENT

Trial of the plaintiffs' petition and amending petitions for declaratory judgment and the defendants' reconventional demand was held on July 26, 27, & 28, 1988. Present for Christopher J. Roy and Chris J. Roy (A Law Corporation) was Leslie J. Schiff. Present for Camille F. Gravel, Jr. and Richard V. Burnes were Charles S. Weems, III and Amanda G.F. Palmer. Janice F. Roy did not appear. Considering the law, the evidence and the argument of counsel, for written reasons assigned on October 7, 1988,

IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Camille F. Gravel, Jr. and Richard V. Burnes and against Christopher J. Roy and Chris J. Roy (A Law Corporation), declaring that:

(1) Gravel, Burnes & Roy law partnership was dissolved as of January 19, 1980,

(2) The four dissolution agreements (the "Dissolution Agreements") entered into among Christopher J. Roy, Chris J. Roy (A Law Corporation), Camille F. Gravel, Jr. and Richard V. Burnes are valid, binding on and fully enforceable by the parties thereto, and

(3) Christopher J. Roy and Chris J. Roy (A Law Corporation) are required to comply with their obligations under the Dissolution Agreements.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Camille F. Gravel, Jr. and against Christopher J. Roy and Chris J. Roy (A Law Corporation) in solido, in the sum of $316,696.98, together with legal interest on the component parts of that sum (fees and expenses) from the dates of collection shown on Exhibit A (6 pages) until paid, subject to credits for payments previously made by Christopher J. Roy in the amount of $12,000.00 on April 12, 1982 and $7,897.42 on June 1, 1982.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Richard V. Burnes and against Christopher J. Roy and Chris J. Roy (A Law Corporation) in solido, in the sum of $216,220.19, together with legal interest on the component parts of that sum (fees and expenses) from the dates of collection shown on Exhibit A (6 pages) until paid, subject to credits for payments previously made by Christopher J. Roy in the amount of $12,000.00 on April 12, 1982 and $3,948.71 on June 1, 1982.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Camille F. Gravel, Jr.

and Richard V. Burnes and against Christopher J. Roy and Chris J. Roy (A Law Corporation), ordering Christopher J. Roy and Chris J. Roy (A Law Corporation) to perform the following in discharge of their obligations under the Dissolution Agreements:

a. Render a full, complete and detailed disclosure and accounting to Camille F. Gravel, Jr. and Richard V. Burnes of the status and disposition of all Gravel, Roy & Burnes cases listed on Exhibit B attached hereto and made a part hereof, such disclosure and accounting to include the name of each client, names of opposing parties and opposing counsel, docket number, venue, status as settled, tried or pending, the amount of fees and expenses collected (if any), the manner of computing such fees, the dates of such collections, and all other facts necessary to give a complete and accurate disclosure and accounting commensurate with a partner's fiduciary duty to his partners. Such disclosure and accounting shall be in writing and shall be delivered to Camille F. Gravel, Jr. and Richard V. Burnes no later than thirty days (30 days) after this judgment is signed. A copy of such accounting and disclosure shall be filed with this Court at the same time. Jurisdiction is retained over any issue concerning the amount due by Christopher J. Roy and Chris J. Roy (A Law Corporation) to Camille F. Gravel, Jr. and Richard V. Burnes for fees and expenses on cases listed in Exhibit B hereto.

b. Immediately upon receipt of any fees and expenses paid in the Sylvia Lott v. Louisiana Power & Light case, Docket No. 14,903, 28th Judicial District Court, now on Appeal in the Third Circuit Court of Appeal under Docket No. 87–1221 and under annuities and structured settlements, including those set forth in Exhibit C which is attached hereto and made a part hereof, Christopher J. Roy and Chris J. Roy (A Law Corporation) shall deposit all of such fees and expenses to the Gravel Roy & Burnes fund account established by the Dissolution Agreements and make a full, complete and detailed disclosure and accounting for such fees and expenses to Gravel and Burnes. The proportionate share of fees and expenses payable to each partner from such collections and from annuities and structural settlements shall be determined in accordance with the Dissolution Agreements. Any annuity or structured settlement of any Gravel, Roy & Burnes case which is not presently registered in the name of or styled as payable to Gravel, Roy & Burnes shall be re-registered in the name of or re-styled as payable to Gravel, Roy & Burnes as soon as this judgment becomes executory. Christopher J. Roy and Chris J. Roy (A Law Corporation) are ordered to obtain and execute instruments and do all other necessary acts to have such annuities and structured settlements so registered or styled.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Camille F. Gravel, Jr. and Richard V. Burnes provide Christopher J. Roy with a list of the Gravel, Roy & Burnes cases, on which Camille F. Gravel, Jr., and Richard B. Burnes agreed to complete case work, as of January 19, 1980.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the right of all parties to request additional accountings is reserved with respect to matters not adjudicated herein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of these proceedings are to be paid from partnership assets prior to final liquidation of Gravel, Roy & Burnes.

JUDGMENT RENDERED October 7, 1988. JUDGMENT SIGNED in Alexandria, Louisiana, this 16 day of November, 1988.

/s/ W.T. McCain
W.T. McCAIN,
JUDGE AD HOC

JUDGMENT OCTOBER _____, 1988

EXHIBIT A (Components)

Ex. A - p.1

## 1982 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| File # | Client Name | Amount of Settlement | Date of Collection | % Fee | Amt of GRB Fee | CRG % | CRG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 9-46-Z | A.J. Roy, et al | $ 3,143.93 | 2/5/82 | 30% | $ 943.18 | 40% | $ 377.27 | 30% | $ 283.55 |
| ¿ | Charles Roberts | 115,197.83 | 4/8/82 | 40% | 46,079.13 | 40% | 18,431.65 | 30% | 13,823.74 |
| 9-48-P | Gaston & Lessie Dauzat | 78,000.00 | 4/1/82 | 35% | 27,300.00 | 40% | 10,920.00 | 30% | 8,190.00 |
| 6-50-M | Ralph Bize | 24,464.55 | 4/30/82 | 40% | 9,785.82 | 40% | 3,914.33 | 30% | 2,935.74 |
| 9-49-E | Eddie Byrd | 2,500.00 | 4/27/82 | 25% | 625.00 | 250.00 | | 187.50 | |
| 9-13-C | Eran Benge | 2,000.00 | 4/2/82 | 25% | 500.00 | 40% | 200.00 | 30% | 150.00 |
| 9- 6-N | Steven & Joan Ruland | 350,000.00 | 5/5/82 | fixed | 75,000.00 | 40% | 30,000.00 | 30% | 22,500.00 |
| 5-31-B | Allen McGuire | 50,000.00 | 8/11/82 | 35% | 17,500.00 | 40% | 7,000.00 | 30% | 5,250.00 |
| 8 ¯7 | Clyde Mayeaux | 25,000.00 | 9/16/82 | 20% of 10,000 10% of 15,000 | 3,500.00 | 40% | 1,400.00 | 30% | 1,050.00 |
| 8-53-J | Donald Ebbeson | 25,735.00 | 11/17/82 | 20% of 10,000 10% of 15,000 | 3,500.00 | 40% | 1,400.00 | 30% | 1,050.00 |
| 8-35-F | Claudia Downs | 15,000.00 | 11/17/82 | 10% | 1,500.00 | 40% | 600.00 | 30% | 450.00 |
| 8-25-D | Danny Guillot | 2,500.00 | 12/28/82 | 20% | 500.00 | 40% | 200.00 | 30% | 150.00 |
| 8-15-C | Daniel Cook | 210,000.00 | 11/17/82 | 30% | 43,500.00 | 40% | 17,610.00 | 30% | 13,207.50 |
| | (20 Year Annuity) | (2 mos. @ 450.00) | | | 900.00 | 40% | 360.00 | 30% | 270.00 |
| | TOTAL FOR 1982 | | | | $ 231,133.13 | | $ 92,453.25 | | $ 69,339.94 |

Ex. A – p.2

## 1983 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| File # | Client Name | Amount of Collection | Date of Settlement | % Fee | Amt of GRB Fee | CRG % | CRG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 8-28-H | Janice Seals | $ 5,000.00 | 1/25/83 | 30% | $ 1,500.00 | | | | |
| 9-13-R | Don & Angela Crowther | 5,000.00 | 2/21/83 | 25% | 1,250.00 | | | | |
| 9-46-S | Georgette Barbin | 2,100.00 | 3/23/83 | 25% | 525.00 | | | | |
| 9-39- | Earl Goss | 9,000.00 | 3/30/83 | 30% | 2,700.00 | | | | |
| 9-35-L | L. C. Lambright | 20,670.69 | 5/25/83 | 10% | 2,000.00 | | | | |
| 9-46-C | Jude Ponthieux | 20,000.00 | 6/28/83 | 40% | 8,000.00 | | | | |
| 8- 7-N | Chris Paul | 1,950.00 | 7/7/83 | 30% | 450.00 | | | | |
| 9-31-H | Clarence Seals (1st suit) | 34,500.00 | 7/19/83 | 30% (6 mos. @ $391.00) | 10,350.00 2,346.00 (6 years) | | | | |
| 9-48-7 | Hess Curry, Jr. | 3,000.00 | 8/1/83 | 20% | 600.00 | | | | |
| 30-2-Q | James Stermer | ? | 9/7/83 | ? | 52,000.00 | | | | |
| 4- -J | Michael Pavalak | 774,000.00 | 10/19/83 | 40% | 309,600.00 | | | | |
| 3-15-C | Daniel Cook | See 1982 | (12 months @ $450.00) | | 5,400.00 | | | | |
| | Plus other GRB Fees Paid | | | | $ 396,721.00 70,862.88 | | | | |
| | TOTAL Fees | | | | $ 467,583.88 | | | | |
| | Amount due at 50/25/25 | | | | 120,000.00 | | | | |
| | Amount paid at 50/25/25 | | | | 70,862.88 | | | | |
| | Still due at 50/25/25 | | | | $ 49,137.12 | 50% | $ 24,568.56 | 25% | $ 12,284.28 |
| | Amount due at 40/30/30 | | | | $ 347,583.88 | 40% | 139,033.55 | 30% | 104,275.16 |
| | TOTAL for 1983 | | | | | | $ 163,602.11 | | $ 116,559.44 |

## 1984 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| File # | Client Name | Amount of Settlement | Date of Collection | % Fee | Amt of GRB Fee | CRG % | CRG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 6-35-P | Ivy Earls | $ 5,000.00 | 3/2/84 | 30% | $ 1,500.00 | 50% | $ 750.00 | 25% | $ 375.00 |
| 9-42-K | Edla Hess | 15,714.76 | 3/8/84 | 30% | 4,500.00 | 50% | 2,250.00 | 25% | 1,125.00 |
| 9-49-D | Joseph Tullier | 25,500.00 | 3/28/84 | 30% | 7,650.00 | 50% | 3,825.00 | 25% | 1,912.50 |
| 9-31-.. | Clarence Seals (2nd suit) | 65,000.00 See 1983 (6 mos. @ $210.00) (20 years) (12 mos. @ $391.00) | 6/8/84 | 30% | 19,500.00 1,260.00 4,692.00 | 50% | 9,750.00 630.00 2,346.00 | 25% | 4,875.00 315.00 1,173.00 |
| 9-30-C | Alene Thompson | 50,000.00 | 10/8/84 | 30% | 15,000.00 | 50% | 7,500.00 | 25% | 3,750.00 |
| 80-2-D | Henry Ponthier | 6,000.00 | 1/16/84 | 30% | 1,800.00 | 50% | 900.00 | 25% | 450.00 |
| 8-15-C | Daniel Cook | See 1982 (12 mos. @ $450.00) | | | 5,400.00 | 50% | 2,700.00 | 25% | 1,350.00 |
| | TOTAL for 1984 | | | | $ 61,302.00 | | $ 30,651.00 | | $ 15,325.50 |

## 1985 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| File # | Client Name | Amount of Collection | Date of Settlement | % Fee | Amt of GRB Fee | CRG % | CRG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 80-2-D | Henry Ponthier | $ 65,000.00 | 9/17/85 | | $ 7,489.85 | 50% | $ 3,744.94 | 25% | $ 1,872.47 |
| 8-15-C | Daniel Cook | See 1982 (12 mos. @ $450.00) | | | 5,400.00 | 50% | 2,700.00 | 25% | 1,350.00 |
| 9-31-H | Clarence Seals | See 1983 (12 mos. @ $391.00) See 1984 ( 6 mos. @ $210.00) | | | 4,692.00 2,520.00 | 50% 50% | 2,346.00 1,260.00 | 25% 25% | 1,173.00 630.00 |
| | TOTAL for 1985 | | | | $ 20,101.85 | | $ 10,050.93 | | $ 5,025.46 |

Ex. A - p.4

## 1986 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| | Client Name | Amount of Settlement | Date of Collection | % Fee | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 7-51-Q | Lonnie Hickman | | 4/10/86 | | $ 7,500.00 | 50% | $ 3,750.00 | 25% | $ 1,875.00 |
| 8-15-C | Daniel Cook | See 1982 (12 mos. @ $450.00) | | | 5,400.00 | 50% | 2,700.00 | 25% | 1,350.00 |
| | Clarence Seals | See 1983 (12 mos. @ $391.00) | | | 4,692.00 | --% | 2,346.00 | 25% | 1,173.00 |
| | | See 1984 (12 mos. @ $210.00) | | | 2,520.00 | 50% | 1,260.00 | 25% | 630.00 |
| | TOTAL for 1986 | | | | $ 20,112.00 | | $ 10,056.00 | | $ 5,028.00 |

## 1987 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| | Client Name | Amount of Settlement | Date of Collection | % Fee | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 8-15-C | Daniel Cook | See 1982 (12 mos. @ $450.00) | | | $ 5,400.00 | 50% | $ 2,700.00 | 25% | $ 1,350.00 |
| 9-.1 | Clarence Seals | See 1983 (12 mos. @ $391.00) | | | 4,692.00 | 50% | 2,346.00 | 25% | 1,173.00 |
| | | See 1984 (12 mos. @ $210.00) | | | 2,520.00 | 50% | 1,260.00 | 25% | 630.00 |
| | TOTAL for 1987 | | | | $ 12,612.00 | | $ 6,306.00 | | $ 3,153.00 |

Ex. A - p.5

## 1988 SUMMARY OF FEES RECEIVED BY ROY ON GRB CASES

| File # | Client Name | Amount of Settlement | Date of Collection | % Fee | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|---|
| 8-15-C | Daniel Cook | See 1982 | (6 mos. @ $450.00) | | $ 2,700.00 | 50% | $ 1,350.00 | 25% | $ 675.00 |
| 9-31-H | Clarence Seals | See 1983 | (6 mos. @ $391.00) | | 2,346.00 | 50% | 1,173.00 | 25% | 586.50 |
| | | See 1984 | (6 mos. @ $210.00) | | 1,260.00 | 50% | 630.00 | 25% | 315.00 |
| | TOTAL for 1988 | | | | $ 6,306.00 | | $ 3,153.00 | | $ 1,576.50 |

SUMMARY OF FEES
DUE NOW

| | Amt of GRB Fee | CFG Amt | RVB Amt |
|---|---|---|---|
| 1982 | 231,133.13 | 92,453.25 | 69,339.94 |
| 1983 | 396,721.00 | 163,602.11 | 116,559.44 |
| 1984 | 61,302.00 | 30,651.00 | 15,325.50 |
| 1985 | 20,101.85 | 10,050.93 | 5,025.46 |
| 1986 | 20,112.00 | 10,056.00 | 5,028.00 |
| 1987 | 12,612.00 | 6,306.00 | 3,153.00 |
| to July 1988 | 6,306.00 | 3,153.00 | 1,576.50 |
| | $ 748,287.98 | $ 316,272.29 | $ 216,007.84 |

Ex. A - p.6

## SUMMARY OF EXPENSES DUE ON GRB CASES HANDLED BY ROY

| FILE # | CLIENT NAME | AMOUNT OF EXPENSES | DATE ROY COLLECTED | DUE CRG % | AMT | DUE RVB % | AMT |
|--------|-------------|--------------------|--------------------|-----------|-----|-----------|-----|
| 80-2-D | Henry Ponthier | 105.35 | 9/17/85 | 50% | 52.67 | 25% | 26.34 |
| 8-26-D | Danny Guillot | 744.03 | 12/8/82 | 50% | 372.02 | 25% | 186.01 |
| TOTAL EXPENSES DUE NOW | | $849.38 | | | $ 424.69 | | $ 212.35 |

### SUMMARY OF FEES AND EXPENSES

| | DUE CRG | DUE RVB |
|--|---------|---------|
| FEES | $316,272.29 | $216,007.84 |
| EXPENSES | $ 424.69 | $ 212.35 |
| TOTAL | $316,696.98 | $216,220.19 |

JUDGMENT OCTOBER _____, 1988

EXHIBIT B

| File # | Client Name |
| --- | --- |
| 5-51-E | Geoffrey Westopher |
| 6-2-N | Buford Smith |
| 5-40-U | Pat Dubroc |
| 6-46-H | Phillip Simmons |
| 6-49-I | Virginia Baptiste |
| 6-51-O | Douglas Cloud |
| 7-1-F | Buford McMills |
| 7-25-I | Leola Paul Willis |
| 7-35-I | Jerome Thompkins |
| 7-63-E | Danny Overland |
| 8-17-B | Elvin Cooper |
| 8-21-D | Earl Sanders |
| 8-21-F | Hattie Davis |
| 8-23-C | Ronald Louviere |
| 8-25-G | Thelma Wingate |
| 8-47-R | Inez Ellis |
| 8-49-N | Bessye Hendrix |
| 8-52-L | Anthony L. Roy |
| 9-1-Y | Shirley Jenkins |
| 9-4-X | Pelican Trucking |
| 9-21-I | Tommy & Maxine King |
| 9-28-A | Steven Manzanares |
| 9-31-I | Chris Deville |
| 9-31-N | Lonnie Reese |
| 9-32-S | Robert D. Allen |
| 9-36-G | Virginia Grace |
| 9-43-E | Ray Shockley |
| 9-44-E | John Brewer |
| 80-4-B | Charles & Donna Cozart |
| 80-4-C | Sandra Jefferson |
| 80-2-D | Henry Ponthier |
| | R. Bruce Phillips |

Ex. C - p. 1

EXHIBIT C

## 2nd HALF 1988 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES & STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|
| 6 | Daniel Cook | See Exhibit A 1982 | (6 mos. @ $450.00) | $ 2,700.00 | 50% | $ 1,350.00 | 25% | $ 675.00 |
| 9-31-H | Clarence Seals | See Exhibit A 1983 | (6 mos. @ $391.00) | 2,346.00 | 50% | 1,173.00 | 25% | 586.50 |
| | | See Exhibit A 1984 | (6 mos. @ $210.00) | 1,260.00 | 50% | 630.00 | 25% | 315.00 |
| TOTAL for 2nd Half of 1988 | | | | $ 6,306.00 | | $ 3,153.00 | | $ 1,576.50 |

## 1989 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES & STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|---|
| 8-.. | Daniel Cook | See Exhibit A 1982 | (12 mos. @ $450.00) | $ 5,400.00 | 50% | $ 2,700.00 | 25% | $ 1,350.00 |
| 9-31-H | Clarence Seals | See Exhibit A 1983 | ( 6 mos. @ $391.00) | 2,346.00 | 50% | 1,173.00 | 25% | 586.50 |
| | | See Exhibit A 1984 | (12 mos. @ $210.00) | 2,520.00 | 50% | 1,260.00 | 25% | 630.00 |
| TOTAL for 1989 | | | | $ 10,266.00 | | $ 5,133.00 | | $ 2,566.50 |

Ex. C - p. 2

## 1990-91 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES & STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|
| 8-15-C | Daniel Cook | See Exhibit A 1982 (24 mos. @ $450.00); | $ 10,800.00 | 50% | $ 5,400.00 | 25% | $ 2,700.00 |
| 9-31-H | Clarence Seals | See Exhibit A 1984 (24 mos. @ $210.00) | 5,040.00 | 50% | 2,520.00 | 25% | 1,260.00 |
| | TOTAL for 1990 through 1991 | | $ 15,840.00 | | $ 7,920.00 | | $ 3,960.00 |

## 1992 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES AND STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|
| 15-C | Daniel Cook | See Exhibit A 1982 (12 mos. @ $450.00) Due 11/13/92 | $ 5,400.00 / 30,000.00 | 50% / 50% | $ 2,700.00 / 15,000.00 | 25% / 25% | $ 1,350.00 / 7,500.00 |
| 9-31-H | Clarence Seals | See Exhibit A 1984 (12 mos. @ $210.00) | 2,520.00 | 50% | 1,260.00 | 25% | 630.00 |
| | TOTAL for 1992 | | $ 37,920.00 | | $ 18,960.00 | | $ 9,480.00 |

Ex. C - p. 3

## 1993-2001 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES & STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|
| 8-15-C | Daniel Cook | See Exhibit A 1982 (96 mos. @ $450.00) | $ 43,200.00 | 50% | $ 21,600.00 | 25% | $ 10,800.00 |
| 9-31-H | Clarence Seals | See Exhibit A 1984 (96 mos. @ $210.00) | 20,160.00 | 50% | 10,080.00 | 25% | 5,040.00 |
| | TOTAL for 1993 through 2001 | | $ 63,360.00 | | $ 31,680.00 | | $ 15,840.00 |

## 2002 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES & STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|
| 15-? | Daniel Cook | See Exhibit A 1982 (10 mos. @ $450.00) Due 11/13/02 | $ 4,500.00 / 45,000.00 | 50% / 50% | $ 2,250.00 / 23,250.00 | 25% / 25% | $ 1,125.00 / 11,625.00 |
| 9-31-H | Clarence Seals | See Exhibit A 1984 (12 mos. @ $210.00) | 2,250.00 | 50% | 1,125.00 | 25% | 562.50 |
| | TOTAL for 2002 | | $ 53,250.00 | | $ 26,625.00 | | $ 13,312.50 |

Ex. C - p. 4

## 2003-2004 SUMMARY OF KNOWN FEES DUE POST 7-1-88 FROM ANNUITIES AND STRUCTURED SETTLEMENTS ON GRB CASES HANDLED BY ROY

| File # | Client Name | Amount of Settlement | Amt of GRB Fee | CFG % | CFG Amt | RVB % | RVB Amt |
|---|---|---|---|---|---|---|---|
| 9-31-H | Clarence Seals | See Exhibit A 1984 (18 mos. @ $210.00) | $ 3,780.00 | 50% | $ 1,890.00 | 25% | $ 945.00 |
| | TOTAL for 2003 through 2004 | | $ 3,780.00 | | $ 1,890.00 | | $ 945.00 |
| | SUBTOTAL FUTURE DUE | | $ 190,722.00 | | $ 95,361.00 | | $ 47,680.50 |
| **DUE DATE UNKNOWN** | | | | | | | |
| 9-47-M | Sylvia Lott | Judgment: $480,000.00 plus interest since 10/19/77 | $ 96,000.00 (principal only) | 50% of $ 48,000.00 1st $120,000; 40% of amount over $120,000 | | 25% of $ 24,000.00 1st $120,000; 40% of amount over $120,000 | |